FERDINAND JOHNSON, AU GRES BOOM COMPANY ET AL. V. THOMAS CRANAGE JR., THOMAS PITTS ET AL.

*Boomage—Charges for log driving—Conditional tender.*

One who contracts to drive logs to a certain point at a fixed rate is bound to discharge any lien for tolls imposed by river improvement companies.

A tender may be coupled with such conditions as the party making it has a right to impose, such as that he shall receive what a payment or tender legally made would entitle him to.

A tender need not be divided to meet separate claims where they are all held by one person. Where more is demanded than is due, the person making the tender cannot be put in the wrong by requiring him at his peril to separate just from unjust charges.

Whether a boom company must not tender delivery of logs before being entitled to demand boomage charges thereon—Q.

An unambiguous contract cannot be varied in its legal effect by the understanding of the parties at or before its execution; and where the only question is as to its legal meaning, its construction cannot be aided by oral evidence of conversations between the parties.

Error to Bay. Submitted October 28. Decided November 10.

REPLEVIN. Defendants bring error. Affirmed.

*Holmes, Collins & Stoddard* and *Scofield & Webster* for plaintiffs in error.

*McDonell & Mann* for defendants in error.

MARSTON, C. J. The defendants in error brought an action of replevin to recover possession of a quantity of pine saw logs, which the defendants below held and claimed a lien upon for charges for boomage, driving the logs, and tolls to an improvement company. There is no serious dispute concerning the facts, and no question of ownership arises.

August 23, 1878, John Jenkinson entered into a written agreement with Pitts & Cranage (plaintiffs below), whereby he agreed to sell them a large quantity of white pine saw logs " to be delivered to said Pitts & Cranage at the boom of the Au Gres Boom Company at the mouth of the Au Gres River," and three million were to be so delivered in the spring of 1879.

March 29, 1879, a written agreement was entered into between the Keystone Lumber & Salt Manufacturing Company and Mapes, Gates & Fay, as parties of the first part, and John Jenkinson of the second part, under which the parties of the first part agreed " to break in, put afloat, and drive down within the limits of the Au Gres Boom Company " the logs then on the banks and roll-ways so sold to Pitts & Cranage. " Said first parties to break in said roll-ways, put afloat and drive down said logs within the limits of the boom aforesaid, on the first stage of water," etc., and in consideration thereof the second party was to pay them fifty cents per thousand feet.

It is conceded that the first parties satisfactorily performed this contract on their part. The Au Gres Boom Company is a corporation organized under the laws of this State, and it is admitted that this company was entitled to receive, and had a lien therefor, seventy cents per thousand feet for its services about the boomage, rafting, etc., of these logs.

Commencing above the limits of the Boom Company, the

Au Gres River East Branch Improvement Company, a corporation organized under the laws of this State, had improved the river by dredging and otherwise, and was entitled to twenty cents per thousand feet as tolls upon all logs passing through that portion of the river by it improved. That this company was entitled to twenty cents per thousand for all the logs in dispute was not controverted upon the trial below or in this court. The statute gives the Improvement Company and the Boom Company each a lien upon logs for the amount of their respective charges.

Ferdinand Johnson was and is secretary and treasurer of the Improvement Company, and treasurer of the Boom Company, and he had " authority to receive pay for the running of the logs on the contract" of March 29, 1879, between the Keystone Company, Gates & Fay, and Jenkinson. Parties wishing to get their logs when rafted, from the Boom Company, had to procure from Mr. Johnson an order upon the superintendent of the Boom Company directing him to deliver the logs, and all legal charges against the logs were to be paid by Mr. Johnson.

About the 27th of May, 1879, Pitts & Cranage were notified that two rafts of these logs were ready for delivery by the Boom Company, and they then ascertained that Mr. Johnson acting for the companies and parties in interest, claimed to hold these logs, and have a lien thereon as follows : In favor of the Keystone Company and Gates & Fay for services under the contract of March 29th, fifty cents per thousand feet; twenty cents per thousand feet in favor of the Improvement Company, and seventy cents per thousand feet in favor of the Boom Company. Cranage, representing the plaintiffs below, the owners of the logs, conceded the correctness of the Boom Company's claim ; he did not question the legality of the Improvement Company's claim, but insisted that the twenty cents per thousand, toll to the Improvement Company, Jenkinson in the first instance was to pay, and under his contract of March 29th with the Keystone Company and Gates & Fay, it was for them to pay the Improvement Company tolls. And acting upon this theory

Cranage tendered a sum in gross sufficient to pay the Keystone Company and Gates & Fay their fifty cents per thousand and the Boom Company's seventy cents per thousand, and demanded the logs, which being refused, this action was commenced.

A number of very interesting questions were raised and discussed, concerning the right of the respective parties to a lien for their charges and the necessity of each retaining actual possession in order to preserve the same, but under our view of this case these questions are immaterial and will not be considered.

Jenkinson under his contract with Pitts & Cranage agreed to deliver the logs at the boom at the mouth of the Au Gres river. As between these parties it is very clear that the cost and expense, including tolls, would be for Jenkinson to pay. Jenkinson let the contract to the Keystone Company and Gates & Fay to put afloat and drive down within the limits of the Boom Company these logs. In driving down these logs they had to pass over the amended highway of the Improvement Company, and thus become liable to a charge or toll for the use thereof.

If Jenkinson under his contract with Pitts & Cranage was bound to pay the tolls, of which there can be no question, why should not substantially the same language in the contract of March 29th cast this burden upon the parties who thereby agreed to deliver the logs in the Boom Company's limits? Had Jenkinson let to these parties the contract of cutting, banking and delivering the logs at the place he had agreed, there could be little doubt but that all would concede the correctness of their paying the tolls, and yet wherein would such a contract differ from this? In their undertaking to deliver at a certain point, had it become necessary to build a dam, or purchase from the owners of a dam a "flood of water" as is frequently done, or to employ the services of a tug, the expense thereof would necessarily fall upon them. Under such circumstances they could no more call upon the owner of the logs to pay such charges, than could a person who had undertaken to deliver a lot of cattle at a certain

point, or a wagon-load of wheat, call upon the owner thereof to pay the tolls of the turnpike companies over which the cattle had been driven or the grain drawn. Where parties unqualifiedly undertake for a sum certain to sell and deliver, or to deliver at a point specified certain things, they must do so, and if, in order to perform their agreement, they must use the improvements or facilities offered by third persons, the expense thereof they cannot charge to the owner of the property.

The contractors under their agreement of March 29th could not deliver these logs at the place agreed upon, without payment of this toll. It was a part of the necessary expense and must, if not paid by the contractors, become and remain a charge upon the logs, but this charge could with no more propriety be cast upon the owner than could the labor account of breaking the roll-ways and driving the logs. It is said the statute gave the Improvement Company a lien upon these logs for its tolls. Granted, and had it decided not to let the logs pass into the Boom Company's limits until payment thereof, how could these contractors have performed on their part, and yet refused to pay the tolls? That the parties running the logs under such a contract must pay the tolls we have no doubt. This being so the tender made to Mr. Johnson, who represented all the claimants, was sufficient to cover all legal charges against the logs, as the twenty cents per thousand for tolls was included in the fifty cents agreed to be paid for running and delivering the logs under the contract of March 29th.

But it is said the tender was made in gross, whereas the amount of the respective liens or claims should have been tendered separately, and that the tender made was coupled with certain conditions, whereas a tender to be good must be unconditional.

A tender may very properly be coupled with conditions such as the party has a right to make and is entitled to as resulting from a payment or tender legally made. This has been repeatedly recognized in this court, and we need but refer to one or two of the late cases. *Brink v. Freoff* 40

Mich. 614; *Lamb v. Jeffrey* 41 Mich. 719. The plaintiffs could not obtain possession of their logs from the Boom Company, even had they paid in full all that was demanded, without an order from Johnson, and they on making a tender to him had a right to couple it with a demand for their logs, or what would entitle them to a delivery of the logs.

And they were under no obligation to separate the sum offered and make a distinct tender to meet each separate claim. Johnson represented all the parties and companies having claims against the logs, and he alone could give the proper order entitling plaintiffs to the possession thereof. It was for him to separate and pay or credit to each what rightfully belonged to it. His knowledge enabled him better than the plaintiffs to do this. Besides he demanded more than he was legally entitled to, and he could not thus put plaintiffs in the wrong, or compel them at their peril to separate the legal from the illegal demands; and it may be questionable whether it was not the duty of the Boom Company, or of Johnson acting for it, to tender delivery of the logs, before having any right to demand the legal charges thereon.

It is also claimed that the court erred in excluding evidence of conversation between Jenkinson and Fay, before the making of the contract of March 29th, relative to the tolls and the amount he would be willing to pay. It is said that the contract must be interpreted in the light of the surrounding circumstances, and that the conversations referred to would be admissible for such purpose, citing several cases in this court in support thereof. In this contract there is nothing ambiguous; the language is plain, free from doubt and no technical terms are used, so that the only question is as to the legal meaning of the contract. In such a case oral evidence in aid of the construction is not admissible. A plain and unambiguous contract cannot be varied in its legal effect, by the understanding of the parties at or previous to its execution.

The judgment must be affirmed with costs.

The other Justices concurred.