JOHNSON v. WALTER ET. AL.

1. **Conveyance:** PRIOR MORTGAGE ASSUMED BY PURCHASER: PAYMENT BY AND INDORSEMENT TO HIM: EFFECT OF. The grantee of a portion of a tract of land, who agreed, as a part of the consideration therefor, to pay off a prior mortgage on the whole tract, cannot, by paying the mortgage debt and having the same assigned to himself, thereby keep the debt alive as against that portion of the land which he did not purchase, but which was subsequently sold and conveyed with covenants of warranty by his grantor to a third party. Neither can he thus keep the debt alive as against that portion of the land which he did purchase, but which he afterwards sold and conveyed with covenants of warranty to another. In his hands the mortgage debt was dead; and one who loaned to him the money to pay it off, and took from him an assignment thereof as collateral security for the money loaned, took by such assignment no greater interest than his assignor had; and his action to foreclose the mortgage was properly dismissed.

2. **Evidence:** PAROL TO CONTRADICT COVENANTS IN A DEED. Where a deed contains covenants of general warranty, it is not competent to contradict such covenants by evidence of a contemporaneous parol agreement that a certain prior mortgage upon the land was to be excepted from such covenants, unless it appears that the exception was omitted from the deed through fraud, accident or mistake.

*Appeal from Jones Circuit Court.*

THURSDAY, DECEMBER 14.

THIS is an action in equity for the foreclosure of a mortgage. The petition was dismissed. The plaintiff appeals. The facts are stated in the opinion.

*Ezra Keeler*, for appellant.

*Piatt & Carr* and *C. E. Wheeler, J. W. Jamison, John McKean* and *Sheean & McCarn*, for the appellees.

DAY, J.—The material facts in this case stated, as nearly as practicable, chronologically, are as follows:

1. On the 10th day of June, 1873, Lewis C. Walter and wife executed to the Ætna Life Insurance Company a mortgage upon the W ½ of SW ¼ of section 23, and the W ½ of

the NW $\frac{1}{4}$ of section 26, and the NE $\frac{1}{4}$ of the NE $\frac{1}{4}$ of sec-27, all in township 83, range 3, west, to secure a promissory note for $1,500, due January 1, 1879; this mortgage is senior of record to the claims of all the defendants and intervenors.

2. On the 19th day of January, 1875, said Walter and wife conveyed by warranty deed to S. D. Crosby, one of the defendants herein, a portion of the mortgaged premises, to-wit: the W $\frac{1}{2}$ of the NW $\frac{1}{4}$ of section 26, and the NE $\frac{1}{4}$ of the NE $\frac{1}{4}$ of section 27. Crosby, as part of the considera-tion-price of the land purchased by him, agreed in writing to assume the mortgage, and to have it released on all the prop-erty mortgaged, including the eighty acres not conveyed to him.

3. On the 19th day of January, 1875, being the same day that he purchased the land, Crosby executed a warranty deed of the same premises to Sarah E. Griswold. Frank Griswold testified that when they bought they assumed the Ætna mort-gage.

4. On the 19th day of January, 1875, Sarah E. Griswold and her husband, to secure the sum of $2,000, executed to S. D. Crosby a mortgage upon eighty acres of the land con-veyed to them by Crosby, in connection with other lands. This mortgage is now held by the Second National Bank of Aurora, intervenor herein. On the 1st day of January, 1877, Sarah E. Griswold and her husband, to secure the sum of $1,000, executed to S. D. Crosby a mortgage upon all the lands conveyed to them by Crosby, in connection with other lands. This mortgage is now held by D. J. Pike, intervenor herein. On July 25th, 1878, Sarah E. Griswold and hus-band, to secure the sum of $430, executed to Wm. Lammer-ton a mortgage on the land last above described. This mort-gage was assigned to M. W. Gleason, a defendant herein, Oc-tober 4, 1878.

5. On January 25, 1875, the said Lewis C. Walter and wife conveyed to Matthew Palmer, a defendant herein, the portion of the mortgaged premises not before conveyed to

Crosby, to-wit: the W ½ of the SW ¼ of section 23, and said Palmer has ever since held the title to said premises.

6.   On the 8th day of March, 1879, Sarah E. Griswold and husband executed a quitclaim deed to Crosby for all the lands before that time conveyed by Crosby to Sarah E. Griswold, and other lands not in controversy in this suit: Crosby, as part of the consideration, assumed and agreed to pay all the mortgages upon the land.   This quitclaim deed, although dated March 8, was not delivered until March 20, 1879.

7.   The defendant, Gleason, claims title to the land sold by Griswold to Crosby, under a sheriff's deed executed March 21, 1881, upon an execution sale against Griswold, March 20, 1880.

8.   The defendant, Seymour, claims to have a mortgage for $4,000, executed by Palmer and wife to Crosby on the Palmer land, dated November 28, 1879, and assigned by Crosby, May 5, 1881.

9.   On the 22d day of February, 1879, Crosby obtained a loan from the plaintiff of $1,500, and executed his own note therefor, with Gleason as security.   At the time of the obtaining of the loan, it was agreed that the note executed by Crosby and Gleason should in a short time, within thirty days, be taken up, and that the loan should be secured by the Ætna mortgage in question, or in some other manner satisfactory to plaintiff, and if the security offered did not prove satisfactory, that the money should be raised in some other manner.   With the money obtained from plaintiff, Crosby paid to the Ætna Insurance Company the amount of its mortgage, and on the 28th day of February, 1879, secured an indorsement of the note to himself, or order, without recourse, and an assignment of the mortgage.   On the 15th day of March, 1879, the plaintiff, having obtained the opinion of one Gortner that the note and mortgage would furnish a valid security, the note of Crosby and Gleason was given up, and Crosby executed a new note for the amount, payable in two

years, and turned over the Ætna Insurance Company note and mortgage, without indorsement, as collateral security. The note executed by Crosby to the plaintiff is still unpaid. This action is brought to foreclose the mortgage executed to the Ætna Insurance Company. The defendants and intervenors insist that it was satisfied in full when it came into the hands of Crosby by assignment from the company.

The case involves two parts which require separate consideration.

*First.*—As to the portion of the land conveyed by Walter to the defendant Palmer: From the facts above stated, it appears that Walter was the owner of 200 acres of land, the whole of which was incumbered by a mortgage to the Ætna Insurance Company to secure the sum of $1,500. On the 19th day of January, 1875, Walter conveyed 120 acres of this land to the defendant, Crosby. At the same time, as part of the consideration, Crosby agreed in writing to pay the mortgage and to have a release of it made upon the whole of the property, including the eighty acres still retained by Walter. As between Walter and Crosby, the debt became that of Crosby, and he was primarily responsible for the payment of it. It is clear that, if ever Crosby became the owner of the note and mortgage, he could not enforce the note against Walter, nor keep the mortgage alive against the portion of the land still retained by him, but that the note and mortgage, having become the property of one who was primarily liable for the satisfaction of them, would instantly become extinguished. See *Byington v. Fountain*, 14 N. W. Rep., 220.* On the 25th day of January, 1875, Walter conveyed the remaining eighty acres of land, by warranty deed, with the usual covenants to the defendant Palmer. It is clear that if Crosby acquired the Ætna mortgage under such circumstances that he could not have enforced it against Walter, he

*1. CONVEY-ANCE: prior mortgage assumed by purchaser: payment by and indorsement to him: effect of.*

---

*This case was decided December 9, 1882, but was held for re-hearing, which was granted, and a supplemental opinion was filed at the June term, 1883. The case will appear in the Iowa Reports in its order as of that term.

could not have enforced it against Palmer, the grantee of Walter with warranty.

The only real question is as to the interest which Crosby acquired in the note and mortgage through the indorsement and assignment from the Ætna Insurance Company.

The appellant insists that Crosby simply acted as the agent of the plaintiff in procuring the assignment of the note and mortgage, and that the indorsement to Crosby should have the same legal effect as though the indorsement had been made directly to the plaintiff.

We are not able to discover from the evidence, however, that it was the intention of the parties that the transfer of the note and mortgage should be effected in any other manner than that in which it was done. It is true the transfer of the mortgage was made with money furnished by the plaintiff. But this money was loaned to Crosby upon his note secured by Gleason, and it became, in fact, the money of Crosby. When Crosby took up the note and mortgage he paid for them with his own money, and he became possessed of them in his own right. No fraud was perpetrated upon the plaintiff by Crosby's taking the indorsement and assignment to himself. The plaintiff was already secured for the loan by the indorsement of Gleason.

It was not the absolute agreement in advance that he should take the Ætna note and mortgage to secure the loan. The agreement was that he was to have security which was satisfactory to him, either through the Ætna mortgage or other security. He was under no obligation or necessity to accept the Ætna mortgage. He might have held the Crosby and Gleason note, which was a short time note, and refused to extend the time of the loan. He elected, after taking advice which was satisfactory to him, to extend the time of the loan to two years, to deliver up the Crosby and Gleason note, take a new note from Crosby, and to accept as collateral security, by mere delivery, the Ætna note and mortgage, then two and one-half months over due. He became simply an assignee

of the note and mortgage, and acquired no greater rights than Crosby himself possessed. See *Younker v. Martin*, 18 Iowa, 143; *Franklin v. Twogood*, Id., 515. It follows that the mortgage cannot be enforced against the eighty acres of land purchased by Palmer.

*Second.*—As to the 120 acres of land conveyed by Walter to Crosby, and by Crosby, by deed of warranty, to Sarah E. Griswold. It is clear that the covenants of war-

SAME.

ranty to Griswold bound Crosby to protect the land against the Ætna mortgage. As to Griswold he was under obligation to see that this mortgage was paid off, unless there was something in the agreement of sale which exonerated him from the obligation of his covenants of warranty. Griswold testifies that they agreed to pay off the Ætna mortgage, but it is not shown that the agreement was in writing, and a mere parol contemporaneous agreement

2. PAROL to contradict covenants in a deed.

could not be set up against the covenants in the deed, unless it was agreed that the Ætna mortgage was to be excepted from the covenants in the deed, and the exception was omitted through fraud, accident or mistake. See *Gerald v. Elley*, 45 Iowa, 322. It does not appear that there was any such agreement or omission. It seems to us, therefore, that Crosby was not released from his legal liability upon his covenants of warranty to protect the title in Griswold's hands against the Ætna mortgage. Having acquired the Ætna mortgage, he is estopped to set it up against his grantee, or the holder of a mortgage executed by his grantee upon the premises. It follows that the petition was properly dismissed.

AFFIRMED.