G. C. BARTELS, APPELLANT, *v.* ANNIE PETERS BRAIN, ADMINISTRATRIX, RESPONDENT

CONSTRUCTION OF LEASE—PAROL EVIDENCE—"REASONABLE USE."

1. Evidence as to the condition, situation, and adaptation of land for a particular use, the declarations of the parties as to the use to which the land was to be put, and that it had no rental value for any other purpose, is admissible, to show the intent of the parties in the use of the phrase "reasonable use."

2. When the meaning in an expression in a written contract is doubtful, it is proper to place the facts in view of the parties when making the contract before the court, when construing it.

MINER, J., dissents on grounds stated in dissenting opinion.

(No. 607.   Decided March 26, 1896.   44 P. R. 715.)

Appeal from the district court of the Third judicial district, Territory of Utah.   Hon. S. A. Merritt, *Judge.*

Action by G. C. Bartels against Annie P. Brain, administratrix, to recover damages for excavations made on land leased to Edward Brain, who by terms of the written lease was to return the premises in as good a condition as when entered upon, reasonable use and wear thereof and damage by the elements excepted.   From a judgment for the defendant, plaintiff appeals.   *Affirmed.*

*Frank Pierce,* for appellant.

The court erred in allowing witness Maxwell to relate a conversation which occurred between Popper and Brain before the lease was executed.

. Witness Maxwell was called for the defendant and stated he heard a conversation between the lessor and lessee in June, 1886, before the lease was executed. The defendant's attorneys stated that they proposed to show the meaning of reasonable use by these declarations. He was permitted to do so over the objection of plaintiff. (Abstract p. 9.)

It seems to us that this was a plain violation of the "primer principles of hornbook law." The lease was before the court. It is complete. It needs no oral proof to explain it. The law presumes that the contracting parties put into it all of their agreements. There is nothing uncertain or ambiguous in the contract. Courts receive parol proof in cases of this kind to show the location of the ground, its condition, its value, the use to which it can be put, the occupation of the parties, and other extrinsic facts, to aid them in the interpretation of specific covenants. But it did not need oral evidence to interpret the writing. The construction and interpretation of all written instruments belong to the court alone. 11 Am. and Eng. Enc. 518; *Folsom* v. *Cook*, 9 Atlantic 93 (Pa.); 3 Am. and Eng. Enc. 867; *Nielson* v. *Hartford*, 8 M. and W. 806; *Barton* v. *Gray*, 57 Mich. 623; *Dwight* v. *Germania Life*, 103 N. Y. 343; *Brady* v. *Cassidy*, 104 N. Y. 147; *Kyle* v. *Bellenger*, 79 Ala. 516; 2 Parsons on Contracts, § 492; Addison on Contracts, 165; *Artic Ins. Co.* v. *Austin*, 25 Am. Rep. 221.

*Williams, Van Cott & Sutherland,* for respondent.

ZANE, C. J.:

It appears from the evidence in the record that Charles Popper, the grantor of the plaintiff, executed a written lease of two and a half acres of land situated in the suburbs of Salt Lake City, for the term of five years from

July 1, 1886, to the late Edward Brain, of whose estate the defendant is administratrix; that Brain, during his lifetime, and his administratrix afterwards, to the end of the term, paid the rent reserved, and occupied the land as a brickyard; that the lease contained the following covenant: "At the expiration of the term in this lease mentioned, he [the lessee] will yield and deliver up the said demised premises to the said party of the first part in as good condition as when the same were entered upon by the said party of the second part,—reasonable use and wear thereof, and damages by the elements excepted." This action was brought to recover damages in consequence of an alleged breach of the above covenant, in surrendering the land, at the end of the term, with a large excavation, made for brick, in its surface. It appears from the lease that the land extended to Brain's brickyard, and, from the testimony, that the leased premises were situated on a hillside covered with sage brush, without water to irrigate it, and that for any purpose except brickmaking it had no rental value; that it adjoined the lessee's brickyard, which he was using, and which had been so dug out at the time of the leasing that it was, in places, 20 feet below the surface of the leased land, up to which the excavation extended; that both parties to the lease knew these facts when it was made; that, after the lease was executed, Popper saw the lessee excavating the land, and making brick of it, without objection; that, during the negotiations before the lease was executed, Popper and Brain agreed verbally that the land embraced in the lease should be used by the lessee for brickmaking purposes, and that clay for brick might be taken therefrom. Evidence of the foregoing agreement, and of the other facts, not in the lease, to show the intention of the parties in employing the terms "reasonable use," was admitted by the court

over the objection of the plaintiff, and the ruling excepted to, and assigned as error.

This evidence was admitted to explain the sense in which the terms "reasonable use" were employed in the covenant sued on. The use that was to be made of the land was not specified in the lease, though real estate may be occupied for many purposes. For life, and its various pursuits and occupations, its necessities and conveniences, require it to be used in many ways. It may be used for residence, commercial, or manufacturing purposes, including the manufacturing of brick, or for other purposes. And, when a particular use is not mentioned in the lease, the land may be used for any lawful purpose indicated by its situation, condition, and adaptability. The reasonableness of the use must be determined by the understanding of the parties, its suitableness, adaptability, situation, and surroundings. From the fact that rent was reserved, it is reasonable to assume that the parties expected the use of the land would be of some value to the lessee; that he would use it so as to get something in return for rent paid. But the evidence in the record shows that the land in question had no rental value for other than brick purposes. Therefore such a use was the only reasonable one to which the lessee could put it. The evidence objected to was not admitted to add to, take from, or to change in any respect the language of the writing. There was no intention of admitting any other language of the contract than that contained in the written instrument. The object of the evidence was to place the facts in view of the parties when they made the lease before the court, when construing it. In order to determine whether a man has acted reasonably, we should know the facts and circumstances in view of which he acted. And, to determine the use that the parties deemed reasonable, the court should know the

facts from which they reasoned. In view of the fact that the particular use to which the land was to be put by the lessee was not mentioned in the lease, it was proper to admit evidence tending to show that the parties intended the land should be used for brickmaking purposes; and it was not error to show the understanding of the parties by their declarations in the form of a verbal agreement, and that the lessor, after the lease was executed, saw the lessee excavating the land, and making brick of it, without objection. This last fact indicated an acquiescence in the construction the court had given it. *Ganson* v. *Madigan*, 15 Wis. 144, was upon a written contract. The court said, in its opinion: "Thus, if the language of the instrument is applicable to several persons; to several parcels of land; to several species of goods; to several monuments, boundaries or lines; to several writings; or the terms be vague and general, or have divers meanings,—in all these and the like cases, parol evidence is admissible of any extrinsic circumstances tending to show what person or persons, or what things, were intended by the party, or to ascertain his meaning in any other respect; and this without any infringement of the general rule, which only excludes parol evidence of other language declaring the meaning of the parties than that which is contained in the instrument itself. If evidence of surrounding facts and circumstances is admitted to explain the sense in which the words were used, certainly proof of the declarations of the parties, made at the time of their understanding of them, ought not to be excluded." *In re Curtis-Castle Arbitration*, 64 Conn. 501, 30 Atl. 769; *Stoops* v. *Smith*, 100 Mass. 63; *Emery* v. *Webster*, 42 Me. 204; *Waterman* v. *Johnson*, 13 Pick. 261; *Sargent* v. *Adams*, 3 Gray 72.

The following paragraph of the charge of the court to the jury is also assigned as error, viz.: "If the jury

believe from the evidence that Charles Popper and Edward Brain agreed that the premises in question should be used, under the lease, for brick purposes, and that Edward Brain and his representatives used the premises in a reasonable manner for such purposes, then the plaintiff is not entitled to recover. In determining what the agreement of the parties was, as to the use of the premises, you may consider, not only testimony bearing directly on the question, if any, but also the surrounding circumstances, including the use the premises might be reasonably put to, the rent agreed to be paid for the premises, and any acts of the parties showing, or tending to show, what was understood by them to be the use that should be made of the premises." In view of the fact that the lease authorized the lessee to make any reasonable use of the premises, the court properly charged the jurors that, if they found from the evidence that the parties to the lease agreed that they might be used for brick purposes, they should find for the defendant. The court informed the jury that, if the fact of the agreement existed, then, as a matter of law, the plaintiff could not recover, in view of the evidence before them. The other facts mentioned in the paragraph quoted were proven beyond any question, and the court properly informed the jurors that they might consider them for the purposes of determining the agreement, and what was understood by the parties to the lease as to the use the premises should be put to.

The decision of the points above considered is decisive of this appeal. It is therefore unnecessary to consider the case further. The judgment of the court below is affirmed.

BARTCH, J., concurs in the judgment.

MINER, J.:

I cannot concur with my brethren in this case. I am of the opinion that the court erred in admitting the testimony of the witness Maxwell, who testified that he heard a conversation between Brain and Popper in 1886, before the lease was executed, and in allowing the witness, under objection, to state what was said between Brain and Popper before the lease was executed, for the alleged purpose of showing what reasonable use meant, as contained in a covenant in the lease, and in permitting the witness to state that before the lease was executed, and while they were conversing about it, Popper said Brain could extract clay from the premises for the purpose of making brick. Popper owned the property when the lease was made. The lease was before the court, and is complete. The law presumes that the parties included therein all their agreements. A contract which the parties intended to make, but did not make, cannot be set up in the place of one which they did make, but did not intend to make. 2 Pars. Cont. 497. The general rule is that parol evidence cannot be admitted to counteract or vary the terms of a written instrument. When parties enter into a written agreement, all their earlier agreements which are not incorporated in the written contract are considered as intentionally rejected. This is so held because if every writing was held subject to enlargment and alteration according to such testimony, and made dependent on the slippery memory and uncertain testimony of corrupt parties, which might be offered on either side, as to the previous intention or collateral facts, it would be of no use to reduce the contract to writing, or to give written contracts fixedness or certainty in any way. 2 Pars. Cont. 548. This is the general rule. As to terms, conditions, and limitations, the contract must speak for itself. But, as to parties or the

subject-matter of a contract, extrinsic evidence may, and many times must, be used to make them certain, if necessary for that purpose. 2 Pars. Cont. 549. So if the meaning of the instrument, by itself, is affected with uncertainty, the intention of the parties may be ascertained by extrinsic testimony; "but this intention, of course, is to be ascertained in all cases, except that of latent ambiguity proper, by a development of the circumstances under which the instrument was made. It cannot be ascertained by bringing forward proof of declarations or conversations which took place at the time the instrument was made, or before or afterwards." 2 Pars. Cont. 564, and note L; *Miller* v. *Travers*, 8 Bing. 244; *Doe* v. *Hiscocks*, 5 Mees. & W. 363; *Kyle* v. *Bellenger*, 79 Ala. 516; *Johnson* v. *Walter*, 60 Iowa 315, 14 N. W. 325. In the case of *Groome* v. *Ogden City Corp.*, 10 Utah 58, 37 Pac. 90, Justice Bartch, in delivering the opinion of the court, said: "Counsel insist that the court erred in rejecting the evidence offered by the appellant as to conversations, understandings, and oral agreements had between the appellant and officers of the respondent prior to the execution of the lease. There is no allegation of fraud, accident, or mistake in the complaint. How, then, can the plaintiff introduce evidence to show the understandings and agreements of the parties which led up to, and culminated in, the making of the lease? Clearly, in the absence of proper allegations, such evidence would be immaterial and incompetent, for the anterior proceedings between the parties were merged in the written instrument, which is complete in itself, and does not require the aid of extrinsic evidence to comprehend its terms. Nor can such evidence be admitted to add to or vary the terms of the instrument, in the absence of fraud, accident, or mistake. In *Kain* v. *Old.* 2 Barn. & C. 627, Chief Justice Abbot said: "Where the whole mat-

ter passes in parol, all that passes may sometimes be taken together as forming part of the contract, though not always, because matters talked of at the commence-ment of a bargain may be excluded by the language used at its termination. But if the contract be, in the end, reduced to writing, nothing which is not found in the writing can be considered as a part of the contract." Benj. Sales, § 621; *Mast* v. *Pearce*, 58 Iowa 579, 8 N. W. 632, and 12 N. W. 597; *Baker* v. *Morehouse* (Mich.) 12 N. W. 170; *Johnson* v. *Walter*, 60 Iowa 315, 14 N. W. 325. The conversation which was sought to be introduced in the above case was as to an understanding between the parties that a spring located on the leased premises was a part of the property leased, and went with it. There is no latent ambiguity in this contract to be explained. No ambiguous or equivocal meaning could be attached to the words, "At the expiration of the lease, the same to be returned in as good condition as when taken, reasonable use and damage by the elements excepted," as used in the lease. The lease expressed the intention of the parties, and no evidence was required to explain its meaning, except that which arose from the lease itself, and the use made of it with the knowledge of the parties, without objection, after possession given. While it is true that evidence may be admissible to show the sur-rounding circumstances, the nature of the transaction, and how the parties acted with reference to a written instrument, for the purpose of explaining any ambiguous, equivocal, or uncertain term therein, yet this would not permit the court under the pleadings and the facts of this case, to allow oral testimony of conversations between the parties, which led up to and culminated in, the making of the written lease, prior to its execution, to be introduced for the purpose of explaining the meaning of the words "reasonable use." To allow this to be done

is going further than any court should be allowed to go, and, if permitted, will break down every safeguard that protects written instruments, and make them subject to the slippery memory and uncertain testimony of parties whose interests may be subserved in some way by improperly supplying or construing that which was before reasonably certain, in the light of the instrument and surrounding circumstances. Under the pretense of explaining a specific covenant as to what reasonable use was, the witness was permitted to give oral conversations between the makers of the lease, one of whom was dead, at a time anterior to its being reduced to writing, and without any statement as to what did take place between them thereafter, and before the writing was executed, and thus supply the very link that was wanting, and which was decisive of the cause, by oral testimony; and that, too, without any allegations in the answer of any fraud, accident, mistake, or any other fact that might place the opposite party in a position to meet the issue thus raised by the evidence. *Insurance Co.* v. *Throop*, 22 Mich. 146; *Johnson* v. *Cranage*, 45 Mich. 14, 7 N. W. 188; *Johnson* v. *Walter*, 60 Iowa 315, 14 N. W. 325; *Neilson* v. *Hartford*, 8 Mees. & W. 806; *Dwight* v. *Insurance Co.*, 103 N. Y. 341, 8. N. E. 654; *Brady* v. *Cassidy*, 104 N. Y. 147; 10 N. E. 131; *Kyle* v. *Bellenger*, 79 Ala. 516; 2 Pars. Cont. 492, 564; *Insurance Co.* v. *Austin*, 25 Am. Rep. 221; *Mast* v. *Pearce*, 58 Iowa 579; 8 N. W. 632, and 12 N. W. 597; *Baker* v. *Morehouse* (Mich.), 12 N. W. 170; *Folsom* v. *Cook* (Pa. Sup.), 9 Atl. 93; *Miller* v. *Travers*, 8 Bing. 244; *Sutherland* v. *Crane*, Walk. (Mich.) 523. I think the admission of this proof was error.