SHELEY *v.* BROOKS.

114    11
158    1254

1. EVIDENCE — AGREEMENT REDUCED TO WRITING — PRELIMINARY NEGOTIATIONS.

> Evidence of oral negotiations preliminary to the execution of a written agreement cannot be considered by the jury as independent evidence of the agreement.

2. SAME—FRAUD AND MISTAKE—BURDEN OF PROOF.

> It will be presumed that a written agreement bearing the genuine signatures of the parties in interest embodied the terms of the preliminary oral negotiations, and the burden is upon an executor to show by affirmative proof that it was otherwise, and that the signature of his decedent was obtained thereto by fraud or mistake.

3. ESTATES OF DECEDENTS—SETTLEMENT—CONTRACTS—CONSIDERATION.

> An agreement by residuary legatees that the proceeds of an insurance policy not otherwise disposed of by the will should be paid to their mother, who was the testator's widow, made after a complete settlement fixing the rights of all the parties to such estate, without affecting their rights to the policy, is void for want of consideration in the absence of fraud or mistake in making the settlement, but is supported by a sufficient consideration if made by way of adjustment of fraud or mistake in the settlement.

4. SAME—ORDER FOR PAYMENT—CONDITIONS—HOW CONSTRUED.
An order by residuary legatees authorizing persons appointed
trustees of the testator's estate to pay to their mother the
amount of an insurance policy belonging to the estate after
all the debts of such estate had been paid, "provided she sur-
vived the payment of such debts," entitled the mother's ex-
ecutor to the payment of such proceeds, where she lived 15
months after the order was given, and the trustees during
such time had sufficient funds to pay all debts, and the will
provided that they should be paid at once.

Error to Wayne; Aldrich, J., presiding. Submitted
February 9, 1897. Decided July 16, 1897.

*Assumpsit* by George A. Sheley, executor of the last
will and testament of Ann E. Sheley, deceased, against
Emma S. Brooks and Elizabeth S. Clark, to recover the
amount of an insurance policy alleged to have been as-
signed to decedent. From a judgment for plaintiff, de-
fendants bring error. Reversed.

*David W. Brooks* and *Julian G. Dickinson* (*Otto
Kirchner*, of counsel), for appellants.

*Corliss, Andrus & Leete* (*H. H. Hatch*, of counsel),
for appellee.

MONTGOMERY, J. Alanson Sheley died, at the age of
84, on November 7, 1892, testate, leaving a large estate
valued at upwards of $600,000. This estate consisted of
real estate in the city of Detroit, Port Huron, and other
parts of the State, bank stock, stock in other corporations,
and notes. Plaintiff is the son of Alanson Sheley, and
the two defendants are his daughters. The will of Mr.
Sheley gave to his widow, Ann E. Sheley, less than she
would have been entitled to under the statutes of descent
and distribution. The plaintiff was remembered in the
will, but the property bequeathed to him was much less
than that given to each of the daughters, and he was not
given the power of disposition of a portion of that which
was bequeathed to him. The two defendants were made

residuary legatees.  After the death of Mr. Sheley, the family was called together, and the will read.  Plaintiff was disappointed and dissatisfied, and his mother, Ann E. Sheley, it would appear, was also displeased.  Following upon this, certain negotiations were had between the parties, tending to an adjustment of any differences. Mrs. Sheley made a claim to $2,000 of bank stock which had not been formally transferred to her in the lifetime of her husband, and also claimed to be entitled to the insurance on the life of one Horace Hallock, which had been assigned to Mr. Sheley during his lifetime, the policy having matured by the death of Horace Hallock, very shortly after the decease of Mr. Sheley.  It appears that on the 14th of November, 1892, the parties entered into a written agreement, providing that Frederick J. Stevens, Lorenzo E. Clark, and Alanson Sheley Brooks should act as trustees of the estate, the parties contemplating that the will of Mr. Sheley should not be probated except necessity should arise therefor.  This agreement recited the provisions of the will of Alanson Sheley, and recited the purpose of the parties to effect the distribution of the property and estate of the deceased in accordance with his intention expressed in his will, and then provided that the property be vested in the trustees for the purposes defined, and further provided that the trustees should pay to George A. Sheley the sum of $10,000 out of the residuary estate bequeathed to the defendants in this case, for the purpose of paying indebtedness owing by George, upon vouchers being produced and audited by J. G. Dickinson as attorney for the parties, and, after full settlement of all his indebtedness, the balance to be paid to him direct.  This agreement made no reference to the Hallock insurance, but on its face purported to contain the whole agreement between the parties relating to the estate of Mr. Sheley.  On the 11th of January, 1893, the two defendants executed and delivered to their mother the following written instrument:

"DETROIT, MICH., January 11, 1893.

"To L. E. Clark and A. S. Brooks, Trustees of the
Estate of Alanson Sheley, Deceased.

"*Gentlemen:* We, as the residuary legatees in said
estate, hereby authorize you to pay to our mother, Ann E.
Sheley, the amount ($5,032.37) which will be collected
by you from the insurance policy upon the life of Horace
Hallock, now deceased, belonging to said estate, after all
the debts of said estate shall have been paid, provided she
survives the payment of such debts. We authorize you
to make this payment because we understand from our
mother that she would like to have it done, and that this
provision for her, in addition to those already made for
her, will be satisfactory to her in all respects and in
accordance with her wish.

"Yours very truly,
"ELIZABETH S. CLARK.
"EMMA S. BROOKS."

It will be seen, therefore, that, so far as the written en-
gagements of the parties show, there was first a complete
adjustment of the rights of the parties under the will in
and to the estate of Alanson Sheley, followed some weeks
later by the order above quoted. Defendants assert that
this order was given at the request of their mother, with-
out consideration. The plaintiff presents another theory.

This action is brought to recover the amount of the
Hallock insurance. There is no claim but that the insur-
ance policy in the hands of Alanson Sheley was his prop-
erty, or that it did not constitute a part of his estate. But
the plaintiff presented two theories below, both of which
were given to the jury, and under either of which a
recovery may have been had. The first theory was that
it was agreed unconditionally between Ann E. Sheley and
her two daughters, the defendants, that the proceeds of
the Hallock policy, when collected, should be paid by de-
fendants to Ann E. Sheley. The second theory was that
the written instrument of January 11th was an agreement
to the like effect, upon a consideration. The testimony
offered to establish the first of these two theories was that
of plaintiff himself, who gave testimony tending to show

that at the time the trust agreement above referred to was executed, or shortly before, another agreement was executed between the same parties, in which it was provided in terms that the Hallock insurance should be paid to Mrs. Sheley. His testimony shows that the last agreement signed was the one above referred to, in which no such undertaking occurred. But the witness further testified that this paper did not contain all the matters and agreements; that he discovered this when *he* signed the last paper; that these papers were to be simply duplicates; and in another place he testifies that he signed the three copies under the impression that he was signing three copies of the original. On the part of the defense it appears that, in the first draft of the agreement between the parties, there was a provision that the Hallock insurance should be paid to Mrs. Sheley. But the testimony of the defense is very positive that but one agreement was actually signed; that this provision was eliminated before the agreement was signed by any of the parties; and that there was never an agreement consummated by which the defendants undertook to pay or cause to be paid to Mrs. Sheley the Hallock insurance, prior to the written order of January 11, 1893.

Under this state of facts, the jury were instructed as follows:

"Plaintiff claims that there is evidence in the case tending to show that after the death of Alanson Sheley, and prior to the making of the order of January 11, 1893, a contract was entered into between Ann E. Sheley and the defendants, whereby, in consideration of Ann E. Sheley foregoing her statutory rights, as widow of Alanson Sheley, to dower rights in his lands, and as distributee of his personal property, and in consideration of her accepting the provisions of the will, they consented and agreed, without qualification and unconditionally, to pay to the said Ann E. Sheley the proceeds of the Hallock insurance policy, or its equivalent in amount; and the jury are instructed to consider all the evidence in the case bearing upon this claim, and to decide whether it is true. I will say further as to this written agreement: If you find that

that agreement, as introduced here in evidence, was signed without any fraud or mistake, then that would be binding, and that would be conclusive as to the agreement of the parties, no matter what former talks they had had, and that any former talks should not be considered by you, only in determining the question as to whether this agreement was signed and understood by all the parties, and signed without fraud or mistake, and embraced the contract of the parties."

We think this instruction is faulty in several respects. Under the evidence adduced, whatever agreement the parties entered into was in fact reduced to writing. It is true, there is testimony tending to show that the three purported duplicates did not correspond, and this was a question for the jury. But, under the instruction, the jury were at liberty to consider the preliminary oral negotiations as independent evidence of such an agreement. This was error. Further, the latter part of the instruction would imply that the burden of proof rested upon the defendants to show that the instrument introduced in evidence was signed without any fraud or mistake, or, in other words, that it embodied the oral agreement between the parties. This is manifestly prejudicial error. There is no dispute that the agreement had the genuine signature of Ann E. Sheley, and the burden was upon the plaintiff to overcome this testimony by affirmative proof of fraud or mistake; and, while we are not prepared to say that there was no evidence upon this point, the jury should have been properly instructed as to the presumption, and the burden left with the plaintiff, where it belongs. And the question obviously was, what was the written agreement between the parties? Unless there was an agreement reduced to writing, and signed by the parties, embodying this proposition, there was no evidence of any fraud or mistake; and while the previous negotiations might be admissible, as bearing upon this issue, they could not be treated as independent evidence, sufficient to sustain the claim of a valid, binding agreement, for, admittedly, the agreement between the parties was

reduced to writing, and was either the instrument produced and introduced in evidence, or some other, which was signed by the parties, and is not produced.

The circuit judge further instructed the jury that if the jury should find that the paper bearing date January 11, 1893, was intended as a compromise and adjustment of matters pertaining to the will of Alanson Sheley, such an agreement would be sustained on grounds less than would be required between strangers, for the reason that the law favors family settlements; and, further, that the waiver by Ann E. Sheley of her rights under the statute of distribution, to the estate of her deceased husband, and her consent to accept the provisions of the will, was sufficient consideration for the agreement on the part of defendants to give her such interest in the estate as they agreed to give her. This is undoubtedly correct as an abstract proposition, provided that in the first instance there was such an agreement between the parties; that is, if the claim of plaintiff is maintained that the actual written agreement between the parties was not the one which was produced by the defendants, but was another, containing this agreement to pay Mrs. Sheley the Hallock insurance, there was undoubtedly in the adjustment of the estate a sufficient consideration to support it. But, in the absence of fraud or mistake, that adjustment completed the settlement of the family relations, and fixed the rights of all the parties in the estate of Alanson Sheley. Therefore, in the absence of fraud or mistake, there was no consideration to support the agreement of January 11, 1893. We think, also, that the reverse of this proposition is true,— that, if fraud or mistake was shown, an adjustment of this fraud or mistake would afford a sufficient consideration for the engagement of January 11th.

In submitting the first proposition of the plaintiff, namely, that, if there was a contract absolutely to pay the Hallock insurance to Mrs. Sheley, the plaintiff could recover, the court stated that this should be qualified by the statement that if Ann E. Sheley accepted the writing of January 11,

1893, as a modification of the original contract, then, and in that case, the agreement of January 11th would fix the rights of the parties.    While, in view of the construction which we feel impelled to give this instrument, this is not very important, yet we think it conclusively appears that the agreement of January 11th was intended as a modification of the original contract, and from thence on became the contract between the parties, as it covered the whole subject of the Hallock insurance, was accepted and received by Mrs. Sheley, and never repudiated.    See *Seligman* v. *Ten Eyck's Estate*, 49 Mich. 104.

This brings us to a consideration of the question as to the rights of the parties under the agreement of January 11th, assuming that there was a consideration for it.    This instrument should be construed, we think, in connection with the trust agreement.    As before stated, the trust agreement recited the execution of the will, and then provided that the purpose was to carry into effect the disposition of the estate in accordance with the testator's manifest intention, as expressed in the will.    The will directed that any debts unsettled at the time of the death of the testator should be at once paid.    The trust agreement directed the trustees to take possession, complete an inventory, ascertain and make a complete schedule of the debts and liabilities of the deceased, recover and collect all demands due and owing the deceased, and receive all income and rentals arising out of the present investments and leases belonging to the estate, and to pay the lawful indebtedness and funeral expenses of said deceased. Then followed a provision to pay and carry out the bequests mentioned in the will, and other provisions. The defendants contend that the agreement of January 11th, in the nature of an order, if on sufficient consideration, amounts to an equitable assignment of the amount of the Hallock insurance, subject to the conditions named in the order, and that these conditions were that the debts should all be paid during the lifetime of Mrs. Sheley, as a condition precedent to any right to assert a claim under

the agreement, and that without regard to whether the time consumed was reasonable or unreasonable; that the delay, if any, was the delay of the trustees, and not the defendants; and that they are not responsible for it. Assuming that this agreement was made upon a sufficient consideration, we think it should be construed in the light of the situation as it then presented itself to the parties. The trustees had entered upon their trust on the 14th of November, 1892, to execute a will which provided that the debts should be at once paid. We think the parties did not contemplate that the payment of these debts might be postponed indefinitely by the trustees. We think, rather, that this provision was inserted to express the intention of the parties that the claim was subject to the debts of the estate, and that it should not be demanded until the trustees should, acting under the terms of the will, have reasonable opportunity to make payment, and to demonstrate this fact. It appears by the record that Mrs. Sheley lived until the 2d of February, 1894, nearly 15 months after the appointment of these trustees. It further appears that within this time bank stock amounting to $75,000, or thereabouts, was transferred to the residuary legatees, and an interest of at least $42,000 in a copartnership of which Alanson Sheley was a member in his lifetime was taken by them; and it is beyond question that there were ample assets to pay the debts. This being so, we think the subsequent delay of the trustees could not defeat the right of Mrs. Sheley to demand payment of this claim, and particularly as property and funds sufficient to discharge the indebtedness have found their way into the hands of the defendants. See *Calkins* v. *Smith's Estate*, 41 Mich. 409.

We think the case could properly be presented to the jury upon the theory that if the written agreement produced by the defendants was not the agreement which the parties signed as a binding agreement, but there was another binding written agreement, and Mrs. Sheley was

induced to sign the paper in question by fraud or mistake, then there was a sufficient consideration in the adjustment between the parties to support the agreement of January 11, 1893, which must be held to be the only existing agreement between the parties relating to the Hallock insurance. In the absence of such satisfactory proof of mistake or fraud as would support the claim indicated, this agreement was without consideration. If upon consideration, the construction of the instrument should be in accordance with the views herein expressed.

The judgment will be reversed, and a new trial ordered.

HOOKER and MOORE, JJ., concurred with MONTGOMERY, J. LONG, C. J., and GRANT, J., concurred in the result.