### RUMSEY v. FOX.

1. SALES—BILLS AND NOTES—DEFENSES—FRAUD—RESCISSION.
The purchasers of a stallion who received the property and who at no time attempted to rescind the contract, cannot question its validity on the ground of fraud in an action on notes given for the purchase price.

2. TRIAL—DIRECTING VERDICT — EVIDENCE —APPEAL AND ERROR.
Disputed testimony cannot be considered in the light most favorable to a party who asks for a directed verdict.

3. BILLS AND NOTES—NEGOTIABLE INSTRUMENTS—PAROL EVIDENCE —RULE—CONTRACTS—CONSTRUCTION.
Under a contract for the sale of a horse which is unambiguous and provides for the giving of joint notes by the vendees, evidence that the parties construed the contract by treating the liability on the notes as several and proportionate, is inadmissible to vary the terms of the notes and contract.

4. SAME—RELEASE—CONTRACTS—JOINT LIABILITY—PARTIES.
A writing, by which the liability of one of the parties to the joint contract is made several and limited to his proportion, does not discharge nor alter the liability of the remaining makers of a promissory note.

Error to Ionia; Davis, J. Submitted June 21, 1909. (Docket No. 60.) Decided September 21, 1909.

Assumpsit by Chauncey J. Rumsey against John P. Fox and others upon certain promissory notes. A judg-

ment for defendants on a verdict directed by the court is reviewed by plaintiff on writ of error.    Reversed.

*A. A. & H. A. Ellis*, for appellant.

*R. A. Hawley*, for appellees.

HOOKER, J.    The defendants are farmers who united in the purchase of a horse from J. Crouch & Son, of Indiana, who advertise to be importers of horses.    An agent of this firm came to the neighborhood in which defendants lived, and circulated a subscription paper, at the same time exhibiting the horse.    The paper, which was signed by most of the defendants, was as follows:

"We, the undersigned, realizing the necessity of improving the stock of our country, do hereby agree to take the amount of stock set opposite our respective names, for the purpose of purchasing the imported German Coach Stallion Eginhart, III, No. 1983, now being sold in Pewamo, Michigan, by J. Crouch & Son, of Lafayette, Indiana, for the sum of $2,600, in shares of $200 each, and agree to give our joint notes in payment for the said stallion, due as follows: $600 due October 1, 1904, $1,000 due October 1, 1905; $1,000 due October 1, 1906, with interest at the rate of six per cent. per annum from date of the notes or cash within two days after the stock is sold."

Subsequently a meeting of the subscribers was held, and the notes now in suit were signed and delivered, and then or at a subsequent meeting an association was formed by the defendants to conduct their business in relation to the horse in accordance with a plan proposed by Crouch & Son, or their agents, and a paper called a stock certificate was given to each subscriber, in the following form:

"Capital stock, $2,600; No. 6, number of shares 13.
    "This is to certify that Henry A. Souder is the owner of one share of $200 in the German Coach Stallion named Eginhart No. 1983.
    "Dated Pewamo, county of Ionia, State of Michigan, this 29th day of June, 1903.
                                        "J. CROUCH & SON."

The subscription paper dropped out of sight after the giving of the notes, apparently being considered by all as a preliminary paper. The notes were sold to the plaintiff soon after they were taken, but it is not claimed that he was a bona fide purchaser without notice. The defendants received the horse and kept him for a year or more, when he was attached and sold on execution to pay a debt of the association. This action was brought upon the notes. The defendants pleaded the general issue, and a few of them gave notice of special defenses, and all claimed that the contract between the parties was several, and not joint. To maintain this it was claimed first that all of the papers—i.e., the subscription, the notes, and the certificates of stock—should be taken together, and that they justify the construction that the notes were several, binding each signer for the amount of his subscription only, and, if this were not so, the testimony given of representations that the parties signing the notes were bound only for the amount of the stock subscribed should be considered in determining the construction. There was also a claim of fraud:

(1) In regard to representations regarding the attributes of the horse.

(2) Regarding the pecuniary responsibility of the persons whom Crouch & Son would accept as subscribers.

(3) The giving of a release (so-called) by Crouch & Son to one of the defendants, agreeing not to hold him responsible for more than the amount of his share.

The instrument reads as follows:

"PEWAMO, MICH., July 31 /03.

"In consideration of O. C. Burns taking one $200 share in the German Coach Stallion sold at Pewamo, Mich., we agree to only hold him responsible for his one share of $200.

[Signed] "J. CROUCH & SON."

This was delivered to Burns after he signed the note. He informed his associates of the fact some five months later. Burns was the last shareholder they secured. We understand that the subscription paper was not presented to him,

and.that he did not sign it, also that several persons who signed the subscription were not acceptable, and were discarded either at the suggestion of one or another of the defendants or Crouch & Son. We should add that the questions of fraudulent representation were all disputed questions of fact, except as relates to the release to Burns, which rests upon his uncontradicted testimony. Each party claimed the right to an instructed verdict. The learned circuit judge said to the jury:

"Both counsel, the counsel representing both sides, agree it is for the court in this case to construe the meaning and effect of the writings that have been brought into this case. It is not within the province of the court to pass upon any oral testimony except where it is admitted or undisputed. * * *

"The question for the court to determine in this case, the principal question, is to decide whether these papers are the joint and several undertaking of the parties who have been brought in here as defendants, or whether they are simply representing the several indebtedness of each of them; they having all signed these papers.

"In order to determine this question, it becomes necessary to examine the different papers that are brought into the case. It seems there was a general plan or scheme on the part of the plaintiff and also on the part of the defendant or defendants when they were bringing about the arrangement that culminated in the giving of these papers.

"Crouch & Son—when I say plaintiff, I should have said Crouch & Son, as the plaintiff really represents them —had a horse they wanted to sell in that vicinity, and had men employed to work among the farmers for the purpose of engaging their attention and directing their attention to this particular horse, and interesting themselves in this horse as being valuable for stock purposes, and their proposition to the farmers in that vicinity was to sell this horse for $2,600 and to divide the $2,600 the value of the horse into—rather to divide the value of the horse into thirteen shares, each to be sold for $200. Some of the parties not feeling able to buy a full share, it was agreed upon and understood that they could buy one-half a share for $100 each.

"In connection with this I find a certificate of stock was issued to some of these men, which reads:

" ' Certificate of stock. This is to certify that Henry Souder (for instance) is the owner of one share of two hundred dollars in the German Coach Stallion named Eginhart No. 1983, etc.

" ' June 29, 1903.
" ' J. CROUCH & SON.'

"I find in addition to that a subscription list. I am now talking about the subscription list that it is claimed on the part of the plaintiff was entered into. There is a dispute upon the proposition. The defendants claim there was no heading to the paper upon which their names were either placed by themselves or by the agent of Crouch & Son, but for the purpose of disposing of this motion the plaintiff is entitled to have it considered. The subscription list they have offered in this case reads:

" ' We, the undersigned, realizing the necessity of improving the stock of our country, do hereby agree to take the amount of stock set opposite our respective names for the purpose of purchasing the imported German Coach Stallion Eginhart III, No. 1983, now being sold at Pewamo, Michigan, by J. Crouch & Son, of Lafayette, Indiana, for the sum of $2,600 in shares of $200 each, and we agree to give our joint notes in payment for said stallion, due as follows: First note, October 1, 1904 (that I believe was changed as shown by the testimony the notes were dated a different time), with interest at the rate of six per cent. per annum.' etc.

"In addition to that and prior to the operation of these so-called notes, and before it was put into circulation by being delivered, I find this paper:

" ' PEWAMO, MICHIGAN, July 31, 1903.
" ' In consideration of O. C. Burns taking one $200 share in the German Coach Stallion sold at Pewamo, Michigan, we agree only to hold him responsible for his one share of $200.
" ' J. CROUCH & SON.'

"These were the papers included in the transaction and the scheme on the part of Crouch & Son was to dispose of this horse for $2,600. Under the undisputed testimony as claimed by the plaintiff, it was to be divided into these 13 respective shares and sold to the various farmers.

"From this certificate it appears that the intention was on the part of Crouch & Son to give to the party that paid $200 one share or one-thirteenth part of the horse. The scheme or plan on the part of the defendants was to purchase this horse for $2,600 and become responsible for $200 as evidenced by the acceptance of the paper itself, receiving that paper and according to the undisputed tes-

timony, and putting their names down and giving the number of shares and value.

"In addition to that, there was a bargain made in writing according to the testimony of the plaintiff, and, according to this paper, that a joint note should be given.

"Now, in the judgment of the court, these papers, so-called notes, were not the joint and several undertaking of these defendants at the time this suit was brought. Mr. Crouch released Burns, one of the makers, and had changed the relations of all the parties, had released one from his liability if it was ever a joint note, or, if intended by the parties to be so, they had changed it voluntarily, and should find no fault if the defendants desire to continue the same relation in which he himself had voluntarily placed them.

"All of the papers taken together as a matter of law according to the findings make and constitute this as a several undertaking on the part of these various parties, and not a joint contract or undertaking or bargain. Not upon the theory the defendants are to avoid or evade the payment of what belongs to them, but that suit should have been brought against each of them, and not against all of them jointly. It must be construed these three papers are simply a bargain to pay for what they bought, and for no more, and not a promise on the part of each one to pay $2,600 and part pay just exactly what Crouch & Son certified they bought, and what they were to pay in the certificate.

"Therefore the jury will be instructed to return a verdict of no cause of action, or rather for the defendants."

A verdict in accordance with this instruction was rendered, judgment followed, and plaintiff has appealed.

We can eliminate some of the questions discussed.

(*a*) The defendants cannot on this record question the validity of the contract on the ground of fraud, as they have never attempted to rescind the contract. *Hodge* v. *Smith,* 130 Wis. 326 (110 N. W. 192).

(*b*) We cannot consider the oral testimony of the defendants in connection with the construction, for the reasons that all of such testimony is disputed, and it would therefore be a question to be submitted to the jury. We must take the testimony of the plaintiff as true.

Coming to the question of construction, we are con-

strained to say that there is nothing uncertain in the language used. Upon the face of the subscription, the defendants expressly and explicitly agreed to give their joint and several obligations for the horse, and while standing alone it was not a contract, because not signed by Crouch & Son, it was a step in the proceeding showing the preliminary understanding upon which the horse was sold. Had it been signed by both parties and the horse delivered under it, it would have created an obligation on each signer to sign a joint promissory note for the full purchase price. It admits of but one interpretation. In the present case it does not appear that it was signed by Crouch & Son, but it is one of the circumstances of the bargain which was made complete by the giving of the notes in question and the delivery of the horse. That these defendants gave their joint and several notes in payment for a horse which was then or subsequently delivered is undisputed. The notes are unambiguous and need no explanation. Such instruments cannot be altered by parol evidence. *Plano Manfg. Co.* v. *Ellis*, 68 Mich. 101 (35 N. W. 841); *Seckler* v. *Fox*, 51 Mich. 92 (16 N. W. 246); *Dunham* v. *Provision Co.*, 100 Mich. 75 (58 N. W. 627); *Cline* v. *Hubbard*, 31 Mich. 237; *Jones* v. *Phelps*, 5 Mich. 218; *Spence* v. *Bowen*, 41 Mich. 149 (1 N. W. 959); *Johnson* v. *Cranage*, 45 Mich. 14 (7 N. W. 188); *Baker* v. *Morehouse*, 48 Mich. 334 (12 N. W. 170); *Cohen* v. *Jackoboice*, 101 Mich. 409 (59 N. W. 665); *Rough* v. *Breitung*, 117 Mich. 48 (75 N. W. 147); *Sheley* v. *Brooks*, 114 Mich. 11 (72 N. W. 37); *Bowins* v. *English*, 138 Mich. 178 (101 N. W. 204); *McEwan* v. *Ortman*, 34 Mich. 325; *Kulenkamp* v. *Groff*, 71 Mich. 675 (40 N. W. 57, 1 L. R. A. 594, 15 Am. St. Rep. 283); *Aultman & Taylor Co.* v. *Gorham*, 87 Mich. 233 (49 N. W. 486); *Hutchinson* v. *Hutchinson*, 102 Mich. 635 (61 N. W. 60); *Phelps* v. *Abbott*, 114 Mich. 88 (72 N. W. 3); *Citizens' Sav. Bank* v. *Vaughan*, 115 Mich. 156 (73 N. W. 143); *First State Sav. Bank* v. *Webster*, 121 Mich. 149 (79 N. W. 1068); *Central Sav. Bank* v.

*O'Connor,* 132 Mich. 578, 139 Mich. 82 (94 N. W. 11, 102 N. W. 280, 102 Am. St. Rep. 433).

From the foregoing authorities it seems obvious that these joint and several notes which are unambiguous on their faces are not subject to a different construction by reason of any parol evidence in the case, tending to show that the parties did not so understand them. Furthermore, if they could be differently construed in the light of such testimony and the circumstance (which we do not intend to imply), such testimony, being contradicted, made it improper for the court to direct a verdict for the defendants.

Counsel for the defendants has cited several cases which he claims to be authority for the proposition that on the face of this contract the notes were not joint, but several. Two of them are decisions of this court. *Davis* v. *Belford,* 70 Mich. 120 (37 N. W. 919); *Western Wheel Scraper Co.* v. *Locklin,* 100 Mich. 339 (58 N. W. 1117). Of these cases it is enough to say that in each there was a contract signed by both parties, and suit was brought upon it. Neither of these indicated a joint liability, and in each was found language plainly implying an understanding that the liability should be several and fully justifying such a construction. See, also, *Davis & Rankin Building & Manfg. Co.* v. *Murray,* 102 Mich. 219 (60 N. W. 437); *Byrne* v. *Werner,* 138 Mich. 330 (101 N. W. 555, 69 L. R. A. 900, 110 Am. St. Rep. 315). The same may be said of most of the other cases cited by defendant's counsel.

There is another question in the case. It is urged that the writing given by Crouch & Son to Burns should be treated as a release, and that for that reason the direction was right. It is enough to say of this that, if this contention is sound (which we do not decide), it did not discharge the full obligation.

The judgment is reversed, and a new trial ordered.

OSTRANDER, MOORE, MCALVAY, and BROOKE, JJ., concurred.