LENA SCHMOHL ET AL.

v.

RICHARD H. FIDDICK.

*Landlord and Tenant—Lease—Conditions—Construction of—Parol Evidence—Acts of Parties.*

1.   A lease of a building containing a clause by which the lessor agreed to "cause to be placed therein and in successful operation therein a steam or hydraulic elevator for the use of said second party for operation between said first and third floors," held, to require the lessor to maintain and operate the elevator at her own expense during the term of the lease.

2.   Where a party himself places a construction upon a contract and agrees to execute it according to such construction and thereby induces its execution he will be estopped from afterward repudiating such construction and insisting upon one more favorable to himself.

3.   Where either of two constructions may be applied to a contract, the one most favorable to the grantee will be adopted.

4.   Where parties come forward and answer a bill upon the merits and submit to the jurisdiction without question, that question can not afterward be raised.

5.   Money paid by appellee under duress of circumstances was properly ordered by the decree of the court below to be paid back to him.

[Opinion filed December 16, 1889.]

APPEAL from the Circuit Court of Jo Daviess County; the Hon. JOHN D. CRABTREE, Judge, presiding.

Mr. E. L. BEDFORD, for appellants.

The words appellee claims were used by J. G. Schmohl— "what difference does it make, we expect to run the elevator anyway"—if used, are but an unexecuted intention, not amounting to a matter of fact, and are not fraudulent. Gage v. Lewis, 68 Ill. 604; Seymour v. Belding, 83 Ill. 222; Purinton v. N. Ill. R. R. Co., 46 Ill. 297.

In the case at bar John G. Schmohl acted as agent of Lena Schmohl, who was known to Mr. Fiddick, the appellee, to be the owner of the property leased. Mr. Schmohl disclosed

Schmohl v. Fiddick.

this fact, and the leases were brought to appellee already signed by her, with the omission of a provision which counsel had advised him was necessary to compel the lessor to maintain the elevator in operation; two leases were brought to him in this condition, and the first draft presented to him was in the same condition.    He testifies that Mrs. Schmohl lived only about 500 feet from his place of business and there was nothing to prevent his having seen her in regard to the matter; this I submit, was sufficient to put him upon inquiry, and that he relied on his own judgment, when he should have submitted the lease to the attorney he was consulting before he signed it.    There was nothing to hinder his having found out what the lessor's intention was, and what the leases signified, before he signed them; and failing so to do he was guilty of gross negligence.    Mead v. Munson, 60 Ill. 50; Connor v. Welch, 8 N. W. 263; Mamlock v. Fairbank, 46 Wis. 445.

Even if Mr. Schmohl did make use of the language attributed to him (which is denied), that "it meant the same thing" without as it would with, the word *maintain*, this would be but a representation of the legal construction of the instrument, which he is presumed to have known, and if he had doubts, could have easily found out.

A representation of what the law will or will not permit to be done is one upon which the party to whom it is made has no right to rely, and if he chooses to do so, it is his own folly; and he can not ask the law to relieve him from the consequences.    The truth or falsehood of such a representation can be tested by ordinary vigilance and attention.    Fish v. Cleland, 33 Ill. 243; Abbott v. Treat, 3 Atlantic Rep. 46; Pike v. Lester, 26 Ill. App. 555; Garden v. Downing, 18 Ill. 592; Shafer v. Davis, 13 Ill. 397.

Messrs. D. & T. J. Sheean, J. M. Sheean and Baume & Leekley, for appellee.

The language of the lease, viz., "and shall cause to be placed therein and in successful operation therein," is capable of the interpretation put upon it by Fiddick, and by the Circuit

Court, and by Schmohl himself, when Fiddick signed the lease. The obligation of the lessor to successfully operate the elevator during the term of the lease is not inconsistent with the language used.

The word " operation," as defined by Webster, is " the act or process of operating; agency; the exertion of power, physical, mechanical or moral." The " act or process of operating " is a continuous act or process, unlimited as to time, unless the time is expressed. In this case the term of the lease is the only time expressed, and the only limit of time placed upon the successful operation " of the elevator.

The lessor was bound to place the elevator in the building; that was one duty; the other duty was to have it there in " successful operation." For how long a time? The lease does not say for an instant, for a minute, hour, day, week, month or year. But the lease does limit all the covenants of the lessor and lessee to five years, this covenant included.

The Schmohls construed the lease to mean that the lessor was required to run the elevator by contracting for the motive power after the lease was signed, and taking control of it without consulting Fiddick and entirely excluding him from it. Fiddick never bargained with any one for motive power, and remained wholly ignorant of its costs for two and a half months after the Schmohls began operating it. In construing contracts great weight is given to the practical interpretation given to the contract by both parties. Chicago v. Sheldon, 9 Wallace (U. S.), 54; Garrison v. Nute, 87 Ill. 215; 2 Pars. on Contracts, 640; Nelson v. Morse, 52 Wis. 253; Church v. Brose, 104 Ill. 208.

It is a familiar rule of construction, that when the terms of an agreement are in any respect doubtful or uncertain, and the parties to it have, by their own conduct, placed a construction upon it which is reasonable, such construction will be adopted by the courts in the event of litigation concerning it." People v. Murphy, 119 Ill. 160; C. & A. R. R. v. C. V. & W. C. Co., 79 Ill. 125.

Fiddick was led to believe, and was made clearly to understand, that the lease meant that the lessor was to maintain the

elevator in successful operation, and that the lessor intended to run it anyway. Under this interpretation put upon the lease by the lessor he was induced to sign it. This being true the lessor can not now claim the opposite interpretation. " Where the terms of a promise admit of more senses than one, the promise is to be performed in that sense in which the promisor apprehended, at the time, that the promisee received it." McCarty v. Howell, 24 Ill. 343; Chitty on Contracts, side page 72, 73; Potter v. Ont. Ins. Co., 5 Hill, 149; Wells v. Carpenter, 65 Ill. 448; Clinton v. Ramsey, 20 Ill. App. 577.

" When a contract has been reduced to writing and one of the parties refuses to sign it unless a certain construction, stated by him, should be put upon it. the other party, who by his silence and conduct has induced him to sign it, will be estopped from claiming a different construction." Flint v. Johnson, 4 New Eng. Rep. 375.

A party is held to his words and acts where, by them, he induces another to act upon them, and is concluded from averring the contrary afterward. Curtis v. Root, 20 Ill. 524; Hill v. Blackwelder, 113 Ill. 291; Racine Bank v. Lathrop, 12 Wis. 479.

C. B. Smith, J. This was a bill filed by appellee against appellants to restrain them from doing certain acts which they threatened to do, injurious to appellee's business. The facts are these: Appellee was a dry goods merchant doing business in the city of Galena. Appellant Lena Schmohl was building a new house suitable for stores, and desired to rent it to appellee, who wanted a larger building than he was occupying, with improved facilities for doing business. Negotiations were entered upon looking to a leasing of the new building by appellee, and the terms upon which he could obtain the building discussed and finally agreed upon between the parties before the lease was written.

The whole and only controversy grows out of the true construction to be given to a single clause in the lease (which was finally executed) between the parties relating to the

operation of an elevator in the building. The lease was to run five years from the first of May, 1887, at a rental of $1,200 per annum.

The following clause was written in the lease : " And it is further agreed that said party of the first part shall heat said floors at a temperature of about seventy degrees during the term when so required. Said first party further agrees to complete said premises ready for occupancy by said second party, and further that she will cause to be placed (therein) and in successful operation therein a steam or hydraulic elevator for the use of said second party for operation between said first and third floors."

The building was completed and the elevator in successful operation, as required by the lease, and appellee took possession about the 1st of April, 1887, and occupied it until July 1, 1887, without any controversy about the elevator, when appellant John G. Schmohl presented appellee a bill of $14.50 for water rents and oil used in operating the elevator for three months preceding, and demanded its payment. Appellee declined to pay the bill for the reason that it was the duty of appellants under the lease to be at all expense in operating the elevator. On July 1st, appellants cut off the water from the elevator and stopped it. Appellee, thereupon, to prevent serious interruption to his business, paid the $14.50 under protest, insisting that he was not liable therefor, and thereupon appellants again turned the water on the elevator. On the 1st of October, 1887, appellants again demanded of appellee $29 for water and oil used in operating the elevator six months, ending Dec. 31, 1887, and threatened to again cut off the water if it was not paid. In order to again prevent this threatened injury and interruption to his business, appellee again paid this $29 under protest.

When appellee first moved into the building, appellants furnished water and oil for the operation of the elevator from April 1 to July 1, 1887, without consulting appellee or in any way asking him to be at any expense in the matter. Appellee contends and testifies that prior to the time the lease was reduced to writing, it was fully agreed and understood that

Schmohl v. Fiddick.

appellants were to maintain and operate the elevator at their own expense during the full term of the lease, and that the amount of rent paid was to cover that expense. This is denied in the answer, not under oath. All the business was done, so far as appellants were concerned, by John G. Schmohl, who is the son of Lena Schmohl. When the lease was reduced to writing, containing the provisions above recited, appellee objected to signing it because it was not expressly stated therein, in plain terms, that appellants should " maintain " the operation of the elevator. Appellant then agreed to write a new lease to embody the words necessary to require appellants to maintain the operation of the elevator, but when he returned with the new lease the word " maintain " was still left out. Appellee still objected to signing the lease and thereupon John G. Schmohl took his pen to interline the word " maintained " in the lease, but instead of putting that very important word in the lease, he interlined the word " therein, " included in parenthesis above. Appellee again objected that the word he wanted in was still left out in defiance of the original agreement and in neglect of the agreement and purpose for which the new lease was just rewritten. Appellant then replied with some warmth and some adjectives not necessary to here repeat, " What is the use of being so particular? we expect to run the elevator any-way." Appellee being assured that it was appellant's intention to run the elevator, and that that was what the lease then meant, he then signed it. James E. Kelly, a salesman in the store of appellee, fully corroborates appellee in his account of the different conversations about the signing of this lease, and its terms, and of the objections of appellee to both leases until John G. Schmohl assured him that it was his intention to run the elevator anyway, and that the lease as written meant the same thing as it would if changed to suit appellee.

John G. Schmohl says he has no recollection of using the language attributed to him by Fiddick and Kelly and thinks he did not use it. But we think his mere failure to remember the use of such language, is not sufficient to overcome the

positive declaration of Fiddick and Kelly, that he did use it, and that he meant and intended to induce in the minds of Fiddick and Kelly the belief that he would maintain the elevator and that the lease as he had written it required him to do so. This view of the case is much strengthened by the admitted fact of Schmohl consenting to rewrite the lease so that the very words desired by appellee might be put into the lease. The words required by appellee were written on a slip of paper by his attorney as being necessary to go into the lease to insure the operation of the elevator at the expense of Schmohl, and that slip of paper handed to Schmohl when he went to rewrite the lease. There was no other necessity for rewriting the lease except to get those words in and it was for that express purpose that Schmohl said he would rewrite it, and yet within an hour or so he returns with a new lease; the very word wanted was again left out and when he was again challenged on that matter, he took up his pen as if to interline the word, but instead interlined another word about which there was no controversy.

The evidence satisfies us that John G. Schmohl was seeking an unjust advantage over appellee and induced him to sign this lease with a belief that it would be construed to mean what he, Schmohl, then said it would mean, and that it would compel appellants to do what they were going to do anyway— viz., maintain in operation this elevator, at their own expense for the full term of the lease; and we are also satisfied from the evidence that appellee signed the lease upon the belief and faith that the construction then placed upon it by John G. Schmohl would be in good faith carried out, and that appellants would then perform the lease as they themselves then construed it.

It will be seen upon inspecting the clause of the lease which we have above copied relating to the elevator, that the interlineation of the word "therein," which we have inclosed in parenthesis, by John G. Schmohl, was wholly meaningless and added nothing but repetition to the clause in question; for the same word was used in the original draft of the second lease, only four words further on in the same line, showing

*where* the elevator was to be put; while the insertion of the word "maintain" in its proper connection in the same clause would have clearly expressed the intention and declared purpose of all the parties to this lease as shown by the proof. The insertion of the word "therein" instead of the word "maintain" was a mere pretense, and utterly without any kind of literary or grammatical necessity and was intended to mislead appellee and entrap him.

The prayer of the bill is to construe this contract of leasing as the parties intended it should be construed, and to hold appellants to the construction which they gave the lease at the time it was executed and for an accounting of the amount of money which appellee had been wrongfully compelled to pay, under protest, for water rents, in order to keep his elevator running, to save himself from severe loss.

The Circuit Court on hearing decreed as prayed for in the bill, and now appellants appeal to this court and ask for a reversal of that decree.

Appellants invoke the well known rule of law that all conversations antecedent to and at the time of the execution of a written contract, are merged in the written contract, and that parol evidence is not admissible to alter or vary the terms of the contract except in case of ambiguity, where a resort to parol evidence is necessary, not to alter or change the contract, but to ascertain the true meaning of the parties; and they insist, first, that there is no ambiguity in the clause of the lease in question needing explanation; and that it was error to admit parol evidence; and second, that if it be true that John G. Schmohl declared that they would run and operate the elevator, still, that was a new promise to do some act in the future, not binding upon him, and not such a legal fraud as would estop him from insisting on the letter of the lease. But the rule above relied on by appellants to defeat this decree, has its exceptions. It is the constant practice of courts of equity to resort to parol evidence where it is charged that contracts have been procured by fraud, duress or mistake. So courts of equity will reform contracts in cases of mistake, or annul them in cases of fraud, or construe them where there is uncertainty,

doubt or vagueness as to their true meaning, and for that pur-
pose a resort to parol evidence becomes a necessity.   So in
cases where a party himself places a construction upon a con-
tract and agrees to execute the contract according to such
construction, and thereby induces its execution, he will be
estopped from afterward repudiating such construction and
insisting upon one more favorable to himself.   Parmlee v.
Lawrence, 44 Ill. 440 ; Curtis v. Root, 20 Ill. 524 ; Hill v.
Blackwelder, 113 Ill. 291.

When a contract is in any respect doubtful or peculiar, and
the parties by their declarations or acts have placed a reason-
able construction upon it, such construction will be adopted
by the courts, in case of litigation arising upon it.   People v.
Murphy, 119 Ill. 160 ; C. & A. R. R. Co. v. Coal Mine Co.,
79 Ill. 125.

Parol evidence is resorted to in cases of doubtful meaning,
not for the purpose of altering or varying the contract, but for
the purpose of ascertaining what the real contract is, and to
enforce it as the parties intended it to be.   Wilson v. Roots,
119 Ill. 379.

But conceding that the clause in this lease in question is not
so obscure or uncertain as to require any parol evidence to
disclose the true meaning of the parties or explain any ambig-
uity, then even in that view we are of opinion that the decree
of the Circuit Court was right.   It is a familiar canon of
construction that all grants, contracts, deeds, and leases of
every description shall be most strongly construed against the
grantor, and if there be any doubt or uncertainty as to the mean-
ing of any such grant, deed or lease, it shall be construed most
strongly in favor of the grantee.   Or if the contract may be
given two constructions, either of which is reasonable, the
one most favorable to the grantee shall be adopted.   McCarty
v. Howell, 24 Ill. 343; Massie v. Belford, 68 Ill. 290; Nat'l
Bank v. Ins. Co., 95 U. S. 678.

Testing the language used in this lease by this rule we are
satisfied that at least one reasonable construction which may
be placed upon it will require appellants to keep in operation
this elevator at their own expense during the term of this

lease.    The language used in this lease needs no unnatural or forced construction to reach this conclusion.

It is objected here that the court of equity had no jurisdiction.    We think that appellants have waived the right to raise that question, even if there is any merit in it (which we by no means concede).    They did not demur to the bill nor raise the question in the answer, but came forward and answered to the merits, and submitted to the jurisdiction of the courts without question.    After doing so it is now too late to raise that question.

We are therefore of opinion that the decree of the Circuit Court, declaring and construing the true meaning of the lease, was correct, both as it appeared on the face of the lease and from what was shown to be its true meaning by the parol testimony taken.

There was no error in the court taking an account of the money wrongfully collected by appellants from appellee for water and oil, which he was compelled to pay under duress of circumstances and which he paid under protest, and requiring its repayment to appellee.    When a court of equity entertains jurisdiction it will retain it until the whole matter in difference between the parties involved in the litigation is disposed of, and will do complete justice between the parties.

We have carefully considered this record and have been unable to find any error in the proceedings or decree of the Circuit Court, and the decree is accordingly affirmed.

*Judgment affirmed.*