BENJAMIN D. WOOD & another *vs.* EDISON ELECTRIC ILLUMINATING COMPANY.

Suffolk. November 11, 1903. — January 6, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & BRALEY, JJ.

*Landlord and Tenant. Contract. Evidence.*

A lease of real estate, under which the lessee was not bound to pay the taxes, gave the lessee an option and right to a further term of five years on giving written notice at least one year before the expiration of the first term, and within thirty days executing a written lease for the additional term, with a provision that in case of such extension the lessee should pay the taxes during the additional term. More than a year before the expiration of the first term the parties executed on the back of the lease an agreement under seal for its extension for the term of five years and eight months from the date of its expiration. The agreement of extension referred to two agreements in writing between the parties by which the lessee surrendered a part of the premises and the rent was to abate proportionally and in case the lessee should exercise the option of continuing the lease for an additional five years, he was released from paying taxes on the surrendered portion of the property. After the expiration of the original term the lessor made bills to the lessee for taxes, with the abatement agreed upon for the released portion of the premises. These bills were paid by the lessee without question for six years, including the period of extension and an additional period of occupation. Thereafter the lessee brought an action to recover the amount of taxes paid, alleging that the payments were made by mistake. *Held,* that there was evidence on which a jury could find that the plaintiff had exercised his option to have an extension of the lease and was bound by its terms to pay the taxes, except as abated by agreement of the parties; that the requirement of a notice in writing was for the benefit of the defendant and could be waived by him, and, moreover, the time for giving the notice had not arrived when the agreement of extension was executed; and that the fact that the parties made the extension run for eight months longer than five years showed merely a modification of the terms of extension which the parties might agree to; *also,* that, if there was un-

certainty as to the meaning of the several writings taken together and applied to the situation and the circumstances of the parties, the construction put upon them by the parties as shown by their conduct might be considered and was important evidence.

CONTRACT for money paid for taxes on real estate leased from the defendant's predecessor in title. Writ in the Supreme Judicial Court dated July 6, 1901.

The case came on to be heard before *Hammond, J.,* who made the ruling stated in the opinion and reported the case for determination by the full court.

During the term of the original lease the plaintiffs as lessees were not bound to pay the taxes. The lease contained the following provision mentioned by the court:

" And it is further understood and agreed that the said parties of the second part shall have the option and right of an additional and further term of Five Years of the leased premises from the expiration of the term of this lease upon the following conditions, provided that they give written notice to the parties of the first part their heirs or assigns, of such their desire at least one year before the expiration of the first term of five years and within thirty days thereafter execute a written lease of like tenor to the present lease for such additional term and in accordance with the following conditions. The Rent for such further term shall be at the rate of Thirty-nine hundred and sixty dollars ($3,960) per year with the addition thereto for each year of such sum as shall be equal to six per centum upon the value of the Northerly Dock of the leased premises as filled up or piled and planked, if so improved, such additional rent to commence from the time when such improvement shall be completed, such value not to be estimated for this purpose above one dollar fifty cents per square foot of the area of the said dock so improved. In addition to such rent the lessees or their assigns shall pay all taxes and assessments to which said premises or any part thereof may become liable during said additional term, excepting taxes with respect to said basement office, and shall pay the same annually, commencing with the year 1893, between November 1 and November 30 in each year. All water rates also to be payable by lessees."

The agreement of extension mentioned by the court was

executed under seal on the back of the lease, and, omitting the attesting clause and the signatures, was as follows : " Boston, April 21, 1892. The term of the within lease is hereby extended to Charles Taft Chapin and Benjamin D. Wood doing business as Chapin Wood & Co., for five years and eight months from and including September 1st 1893, viz : — to May 1st 1899, upon the within described premises not released from said lease by Chapin, Wood & Co. by their agreement under seal with the Edison Electric Illuminating Company of Boston dated March 1st and April 21, 1892 and is extended for the same time upon the additions to said premises agreed upon between said parties by said agreement of April 21, 1892. This extension is made subject to the same conditions covenants and agreements so far as applicable contained in the within lease for the term thereof to expire August 31st 1893 except as affected by said agreements of March 1st and April 21st 1892."

*C. H. Wardwell,* for the defendant.

*C. F. Kittredge & C. H. Richardson,* for the plaintiffs.

KNOWLTON, C. J. The plaintiffs by assignment are the successors in title to the lessees, and the defendant is the successor in title to the lessors of a large part of Liverpool wharf in Boston, under a lease bearing date August 2, 1888, and running five years from the first day of September in that year. This lease, with certain modifications, was extended five years and eight months to May 1, 1899. The important question in the case is which of the parties was to pay the taxes on the property after the expiration of the original term. The presiding justice, for the purposes of the trial, ruled as matter of law that the lessees were not bound to pay, or in other words, that there was no evidence which would warrant the jury in finding that they were bound to pay, directed a verdict in accordance with this ruling and other rulings which are made immaterial by our decision, and reported the case to this court.

The original lease contains a provision giving the lessees an option and right to a further term of five years on condition that they give written notice of their desire at least one year before the expiration of the first term, and within thirty days thereafter execute a written lease for the additional term, of like tenor with the first, with a special provision in regard to the

rent of a part of the property, and with a requirement that the lessees pay the taxes except upon a certain office in the basement. On March 1, 1892, the parties executed an agreement under seal in regard to a part of the leased premises, namely, the northerly dock which was then being filled by the defendant, which by the lease was to be used by the lessees when completed. By this agreement the lessees released from the leased premises a portion of this northerly dock between designated lines, and an allowance in diminution of the rent was made to the lessees for the remainder of the term, and it was further provided that if the lessees should "exercise their option to continue said lease for an additional five years as provided therein, then said Chapin, Wood & Co. shall be allowed a monthly deduction from their rent for said additional five years at the rate of sixty-seven and 32/100 dollars ($67.32) per year and be released from all obligation to pay taxes and assessments upon said portion of the northerly dock contained within the lines A, B, C, and D. This agreement in no way to affect the provisions of said lease, except as far as the payment of rent and taxes and assessments as hereinbefore provided and the portion of the premises given up as hereinbefore provided is concerned." The part within the lines A, B, C and D was the part of the northerly dock released by the lessees, and the deduction of $67.32 per year from the rental, was a much less deduction than that made for the remainder of the original term.

The lease continuing in force with this modification, the parties, less than two months later, on April 21, 1892, wrote and executed upon the back of the lease an agreement under seal for its extension for the term of five years and eight months from the date of its expiration. They agree that the lease is "extended" for the period named. The agreement states nothing about the rent, or any other terms, conditions or covenants, except by reference to the lease and to the agreement of March 1, 1892, and to another agreement of April 21, 1892, executed apparently contemporaneously with this. The agreement of April 21, referred to in the extension, is also a modification of the lease, whereby the lessees agree to give up that portion of the northerly dock included in their lease which was not given up by their agreement of March 1, 1892, and the defendant

agrees to build out the front of Liverpool wharf a distance of thirty feet and allow the lessees to use it as a part of the leased property.   There are various provisions as to the mode of use, and as to the payment of fees and percentages.   The contract provides for the continuance of the use for a period of five years and eight months from the expiration of the original term of the lease.   The agreement also contains this provision : " All taxes upon the 2,631 square feet of Northerly Dock hereby released and all increased taxes which shall be payable on account of additions to and improvements upon Liverpool Wharf and Northerly Dock Wharf shall be paid by said corporation " (the defendant).   After the expiration of the original term the defendant made bills to the lessees for the taxes, making deductions for the tax upon that portion of the northerly dock given up by the agreement of March 1, 1892, and also upon the remaining portion given up by the agreement of April 21, 1892, and upon the improvements, and making a deduction also from the rent at the rate of $67.32 per year in accordance with the agreement of March 1, 1892, and the lessees paid these bills without question as to liability, or otherwise than as to the amount, for six years, covering the whole period of the extension and an additional period of their holding.   Not until the autumn of 1899 when a controversy had arisen as to other matters and they were advised by counsel that under the writings they were not obliged to pay the taxes, did the plaintiffs ever question their obligation.   They afterwards brought this suit to recover back the money as paid by mistake.

We are of opinion that the jury would have been warranted in finding that the lessees exercised their option to continue the lease, and that the written extension of the term was given and received on April 21, 1892, as and for the additional lease of like tenor, mentioned in the original lease.   The original lease was treated as subsisting with certain modifications agreed to by the parties.   Notice in writing from the lessees to the defendant was for the defendant's benefit and might be waived.   Moreover, the time for giving it had not arrived when the extension was agreed upon, for the original term had then considerably more than a year to continue.   The fact that the parties made the extension run eight months longer than the five years is of

little significance.   On the exercise of the option they all might
agree upon such a modification.   There is nothing in the form
of the writing of extension which is inconsistent with its being
given in pursuance of the exercise of an option by the lessees.
It was not necessary that it should be a lease with formal
covenants.   It refers to the existing lease for its provisions.   It
adopts the changes contained in the agreement of March 1, 1892,
and the other agreement of April 21, 1892.   Each of these
agreements assumes that the provision as to taxes, founded on
the exercise of the option, is in force.   Each releases the lessees
from the payment of the taxes on that portion of the property
which is surrendered to the defendant, and treats the lessees as
bound to pay the other taxes in accordance with the language
of the lease applicable to the exercise of the option.   The agree-
ment for the extension makes the agreements of March 1 and
April 21, 1892 controlling as to the matters to which they relate.
The agreement of March 1 purports to cover the rights of the
parties as to the changed conditions for the additional term, and
unless its provision is adopted there is no provision anywhere
in reference to these changed conditions.   It makes a provi-
sion only upon the hypothesis that the lessees exercise their
option, and in that case it recognizes their obligation to pay
taxes, and releases them from this obligation as to a part of the
premises which they gave up, continuing by implication the
obligation as to the rest of the premises.   Both parties sub-
sequently acted upon this provision for more than six years, not
only as to the taxes, but also as to the deduction of $67.32 from
the annual rent. . All parties seem to have understood that the
extension of the lease was made in pursuance of the lessees' ex-
pression of their desire and choice to continue the lease, and that
the taxes were to be paid by them in accordance with the pro-
visions of the original lease in case of renewal, subject to the
modifications which released them from that obligation as to
taxes assessed upon the property given up.   It was a question of
fact to be determined by way of inference from the papers and
from all the evidence, whether the lessees exercised their option,
and whether the extension of April 21 was given in pursuance
of their election to continue the lease.   If there was uncertainty
in the meaning of the several writings taken together and ap-

plied to the situation and the circumstances of the parties, the construction put upon them by the parties themselves may be considered, and in a case like this it is important evidence. We are of opinion that the jury might have found that the plaintiffs were bound to pay the taxes.

> *Judgment for the defendant on the third count, and for the defendant for the larger sum in the declaration in set-off.*