LYDIA C. CHAMBERLAIN, Appellant, v. WILLIAM L. L. BROWN AND OTHERS, Appellees.

**Landlord and Tenant:** USE OF PREMISES. In the absence of restrictions in the lease the tenant may use the premises as he chooses, not materially different however from the purpose for which they were specifically designed, so long as he does not commit waste or create a nuisance.

**Same:** RESTRICTION OF USE OF PREMISES: INJUNCTION. Where a lease expressly limits the use of premises to a specific purpose and prohibits its use otherwise, equity will enjoin a violation of the restriction by the tenant.

**Same:** IMPLIED RESTRICTIONS. There may be an implied limitation of the use of leased premises by a tenant, but it will only be found or enforced when a fair construction of the instrument demands it; and the mere statement that the premises may be used for a certain purpose will not give rise to an implied agreement that it would not be used for any other purpose, especially where there is a further provision that the tenant will not permit waste, or use the premises for any unlawful, improper or offensive purpose.

**Same:** CONSTRUCTION OF LEASE. The circumstances under which a lease was made, the conduct of the parties respecting the same, the condition of the premises and the practical interpretation of the instrument by the parties themselves, are matters to be considered as bearing upon the implications to be drawn therefrom.

**Same:** PAROL EVIDENCE. While parol evidence cannot be received to vary the terms of a written lease, still it may be admissible to show the manner in which it was understood by the parties.

**Same.** As bearing upon the intention of parties to a lease, the use made of the premises at and prior to the lease, their condition and suitableness for a given purpose may be shown by parol: and, where the lease is silent as to the use of the premises the intention may be supplied by parol.

**Husband and wife:** JOINT TENANTS: LEASE BY HUSBAND: AGENCY. A husband who is a tenant in common with his wife can not bind her separate interest by a lease of the whole property without authority from her; but he may do so as her authorized agent, and his agency may be inferred from facts fairly indicating that

his act in so doing was with her knowledge and consent. Evidence held to show agency of the husband to lease his wife's interest in their joint property.

**Same:** RATIFICATION OF AGENT'S ACT: ESTOPPEL. A principal can not ratify and profit by a contract of lease made by an agent, and at the same time repudiate the obligations imposed by other provisions of the instrument.

**Same.** A contract will be construed against either party in the sense in which he had reason to believe the other party understood it; so that a lessor of property, under a lease made by an agent, will not be permitted to deny the right of the lessee to heat and light other property from the plant located on the leased premises, where it appeared that at a prior time, with knowledge of such use and without objection thereto he had made a written agreement with the lessee recognizing and modifying the original contract.

**Landlord and tenant:** WASTE. A tenant does not violate his covenant not to commit waste by using the heat and light on the leased property to heat and light adjacent property, where such use does not overtax or deteriorate the plants.

*Appeal from Polk District Court.*—HON. JAMES A. HOWE, Judge.

THURSDAY, MARCH 11, 1909.

ACTION in equity for an injunction to restrain the defendant Brown from certain alleged misuse of leased premises and for damages. Petition dismissed, and plaintiff appeals. The material facts are stated in the petition.—*Affirmed.*

*Robert O. Brennan* and *Lewis Miles,* for appellant.

*Read & Read,* for appellees.

WEAVER, J.—In May, 1903, and for some time prior thereto, the plaintiff and D. S. Chamberlain, at

that time husband and wife, were the owners as tenants in common of a lot at the northeast corner of Locust and West Seventh Streets in the city of Des Moines; said lot extending eighty-eight feet on Locust and one hundred and thirty-three feet upon West Seventh. During the year mentioned the plaintiff was living temporarily at least in the city of New York, but the husband was personally engaged in business at Des Moines and appears to have had immediate oversight and management of said property. The defendant Brown being a man experienced in the hotel business, negotiations were opened between him and D. S. Chamberlain looking to the erection of a hotel building on the property above described to be leased and occupied by Brown. The discussion of the project and the settling of the details of the enterprise covered a period of several months. The plaintiff in New York was advised by her husband of the contemplated lease and the general nature of the proposed improvement, and, while but part of the correspondence between them is in evidence, she appears to have consented to the undertaking and to have left the negotiations entirely to him. In April, 1903, Chamberlain wrote his wife that the plans for building a six-story fireproof building, to be known as the Chamberlain Hotel, and to cost $200,000, were complete, and that to carry out the scheme it would be necessary for him to raise $150,000 by mortgage on the property, which instrument he inclosed with a request for her to execute and return the same, which she appears to have done. In May a preliminary written contract, by which the Chamberlains agreed to erect the building and Brown undertook to lease the same when completed on terms stated therein, was prepared in Des Moines and sent by Chamberlain to his wife, who signed and returned it. In December, following, the building being completed, a formal lease

was made and delivered to Brown. This writing was also executed by plaintiff in New York City. Shortly after the lease had been made, a divorce was decreed between plaintiff and husband, and in the settlement of alimony she received a conveyance of his interest in the hotel property. On January 4, 1906, Brown complained that the rent reserved in the lease had proved to be excessive, and plaintiff, after some investigation into the business and into the justice of the complaint, made a written offer to modify the contract, which offer was duly accepted. The modification relates solely to the amount of rent and terms of its payment. This action was begun August 19, 1907. The petition sets up the original contract, the lease, and the modification thereof to which we have referred; alleges that the property was designed to be used for hotel purposes only and was leased to the defendant for such purpose and for no other, but that defendant, in violation of the terms of the agreement, and without the knowledge and consent of the plaintiff, had made use of the heating and lighting plant, apparatus, and machinery (which had been put in at great expense for the use of the hotel only) to supply heat and light for other buildings on adjacent property and had in other ways made use of the property for purposes not contemplated by the terms of the lease. Upon the case thus stated plaintiff asked for the recovery of damages and for an injunction permanently restraining the lessee from using the heating and lighting plant of the Chamberlain Hotel to supply heat or light to any other property.

The defendant, admitting plaintiff's title to the property subject to his lease, denies that he has in any manner or form violated the terms of his tenancy. He admits that he has from the exhaust steam of the boiler on the leased premises furnished heat to certain rooms

in a building known as the Turner property facing on Seventh Street immediately north of his hotel, and further says that, in connection with the hotel leased from plaintiff, he conducts what is known as the Aberdeen Hotel or Chamberlain Annex, standing on the same block, but facing to the north, and that he has furnished and is furnishing to said annex heat, light, and hot water from the boilers and machinery in the Chamberlain. Defendant further alleges that all of his negotiations for the lease of the property owned by plaintiff were had with D. S. Chamberlain only, whom he then supposed to be the owner of the entire estate, subject only to the marital rights of the plaintiff, and that with the knowledge and consent of Chamberlain, and in anticipation of leasing the new house to be built, he acquired the Aberdeen with the purpose of operating it in connection with the Chamberlain Hotel, being advised so to do by D. S. Chamberlain, who pointed out to him that he could supply both houses with heat and light from a single plant. He further alleges that said Chamberlain acquiesced in said plans and purposes, and that in pursuance of such agreement and understanding, and at defendant's request, said Chamberlain, when putting in the heating and lighting plant, put in the connections necessary to enable the plaintiff to conduct heat, water, and electricity therefrom to said adjoining property; the extra cost and expense thus occasioned being paid by the defendant. He further denies that the use he has made of the machinery and appliances upon the leased property in furnishing heat, light, and water to the other buildings mentioned has in any manner occasioned injury to the plaintiff or to the leased property, and avers that the use to which he has put the property is such only as was contemplated by the parties in making the lease, and that plaintiff is therefore barred and estopped to maintain this action.

After hearing the evidence offered upon the issues joined, the trial court found: That the original contract and lease for the Chamberlain property was negotiated by the said D. S. Chamberlain for himself as a joint owner of the property and as the authorized agent and representative of the plaintiff; that the heating and lighting plants on the leased premises were made and constructed by said Chamberlain with a view to their use by defendant in supplying adjacent property if he should elect so to do, but not in excess of the rated capacity of said plant; and that it was upon that basis and in consideration of the building, machinery, and appliances as thus constructed that the lease was made and the rent charge fixed. It further found that from the time defendant entered into possession of the leased premises he made use of the heat, steam, and electrical appliances in supplying said additional property with the full knowledge of Chamberlain and with his consent, and that defendant was in the enjoyment of said use openly and notoriously before and at the time the lease was made, and has ever since been in such possession and use. It further found that, the plaintiff having accepted the benefits of the arrangement and agreement made between her husband and the defendant, she is estopped now to deny their binding obligation upon herself. The prayer for an injunction and other relief was therefore denied, and the appeal dismissed. From this decree the plaintiff has appealed. The proposition underlying the appellant's case is that the property was let for hotel purposes only, and that in supplying heat and light therefrom to the other property mentioned appellee has violated the terms of his lease. Whether this be so depends, of course, upon the construction to be placed upon the writing, and to that question, in the varying forms in which it is presented by counsel in argument, we now give attention.

I. The right of a lessor to restrict the use of leased property to a particular or specific purpose, if clearly expressed in the lease, is not disputed, and, if the case before us were one of this kind, its decision would involve no doubt or difficulty; but the lease we have to construe contains no express restriction or prohibition of any kind concerning the use of the premises, except such as may be found in the agreement of the lessee that he will not underlet the premises or make any changes therein and will not suffer waste or any unlawful, improper, or offensive use thereof. Indeed, there is no express statement in the lease itself to indicate that the building is constructed or intended for use as a hotel. It is true that the preliminary contract made in May, 1903, provides that Chamberlain and wife will erect a hotel on the site mentioned and supply it with certain machinery, appliances, and conveniences, and that when finished the property will be let to the appellee for a stated period on terms as contained in the lease subsequently executed. This prior contract may properly be considered among the circumstances in the light of which the lease is to be construed; but it constitutes no part of the lease itself, and, if the latter instrument when thus construed does not restrict the use of the machinery and appliances solely to the convenience and requirements of the Chamberlain Hotel, then the trial court was not in error in denying the relief demanded in the petition. It is an elementary principle of the law of landlord and tenant that in the absence of restriction, express or clearly implied, in the contract of lease, the tenant is during his term entitled to all of the rights of use which the owner of the property ordinarily exercises and enjoys, and may put the premises to whatever lawful use he may choose not materially differing from that for which they have been

1. LANDLORD AND TENANT: use of premises.

specially designed or constructed, so long as he commits no waste and creates no nuisance.    24 Cyc. 1061;  18 Am. & Eng. Encyc. Law (2d Ed.) 634.

As already suggested, if the lease expressly limits the use of the property to a specific purpose and prohibits its use for any other, a court of equity will upon a proper showing enjoin the violation of the restriction by the tenant.    *Stewart v. Winters,* 4 Sandf. Ch. (N. Y.) 587.    With very few exceptions all of the cases applying this rule involve the consideration of leases which expressly and clearly provide that the property shall be used for specific purpose, and for no other; but counsel say, and cite authorities to the effect, that, in the absence of express provision therefor, the restriction to a particular use will sometimes be implied, and the correctness of this proposition may be admitted.

2. SAME: restriction of use of premises: injunction.

It is no less true in our judgment that an implication prohibiting a reasonable and orderly use of property by a tenant will not be found or enforced unless a fair construction of the language implied clearly demands it.    As said in *Brugman v. Noyes,* 6 Wis. 3: "Equity will not raise an implied covenant in restraint of the beneficial use of the property."    We are not prepared to accept the contention of counsel that the mere statement that leased property is to be used or may be used for a given purpose is, without more, sufficient in all cases to raise an implied covenant or agreement that it will not be used for any other purpose.    The case above cited from the Wisconsin court is here directly in point.    The lease there being considered was for certain property to be used as "cabinet warerooms," and the landlord sought to enjoin their use for any other purpose.    In denying the right to this relief

3. SAME: implied restrictions.

the court had occasion to consider the same argument which is urged upon our attention in the instant case, and said:

If the complainant had leased the premises expressly and exclusively to be used for a particular purpose or in a particular manner, and there was a continuing breach or disregard of the stipulation, a court of equity would perhaps interfere and enforce the restriction by compelling the lessees to use them for their business. The insuperable difficulty in this case is that there is no express covenant not to use the buildings except for cabinet warerooms. The clause in the lease is that the buildings were to be used as cabinet warerooms without the words of restriction. It appears that there is another clause in the lease that no cabinetware should be manufactured in the buildings, and probably this express prohibition would have been enforced had the lessee entered upon the business of manufacturing cabinetware. The counsel for the complainant contends that the clause in the lease that the premises were to be used as cabinet warerooms amounts to a direct covenant to use them as such, and for no other purpose whatever. We are unable to concur in this construction of the lease. Of course the intention of the parties, as that intention is gathered from the whole lease, must control in the case, and, looking at the language of this clause, as well as of other clauses, we do not feel authorized in saying that the sense and meaning of the words employed show that it was the intention of the parties to restrict the use of the buildings to cabinet warerooms and prohibit the use of them for any other purpose. We think such a construction is forced and ought not to be adopted. As already observed, there is an express covenant against manufacturing cabinetware in the buildings, and it seems but fair to presume that, if the parties intended restraining the use thereof to cabinet warerooms, they would have distinctly and expressly stipulated to that effect. It is obviously inconsistent with the principles upon which courts of equity act to raise by implication a covenant in restraint of a beneficial use of the property.

To the same effect, see *Shumway v. Collins*, 6 Gray

(Mass.) 227; *Kerley v. Mayer,* 10 Misc. Rep. 718 (31 N. Y. Supp. 818); *Nave v. Berry,* 22 Ala. 382; *Foozer v. Bank,* 78 S. C. 5 (58 S. E. 934).

The case of *Kraft v. Welch,* 112 Iowa, 695, relied upon by appellant, is not inconsistent with these holdings, for in that case the property was not only "let for creamery purposes," but expressly enumerated what additional buildings might be placed thereon by the tenant, and it was a violation of this provision by him in erecting a building not so authorized which we held would be enjoined by the court.

Again, as we have seen, the lease before us contains an express covenant that appellee will not suffer any waste or any unlawful, improper, or offensive use of the premises; and, as suggested in the *Brugman* case, *supra,* it is not an unreasonable argument that the express mention of these certain restrictions carries with it at least a slight implication that none other was intended. There is another familiar rule applicable to cases of this kind that, if the meaning and effect of the lease be fairly capable of two constructions, that will be adopted which is most favorable to the lessee. *Schmol v. Fiddick,* 34 Ill. App. 190; *Klingle v. Ritter,* 54 Ill., 140; 18 Am. & Eng. Encyc. Law (2d Ed.) 617.

It is also a familiar law applicable to all classes of contracts that the circumstances under which the writing was made and conduct of the parties with reference thereto, the condition of the property which is the

**4. SAME: construction of lease.** subject-matter of the agreement, and the practical construction which the parties themselves have placed upon it, are all matters which have a legitimate bearing upon the construction of the terms implied therein. For cases applying this rule to agreements between landlord and tenant, see *Milan v. Kephart,* 18 Grat. (Va.) 1; *Bartels v. Brain,* 13 Utah, 162 (44 Pac. 715); *Bell's Ad'mx v. Golding,* 27 Ind. 173; *Thomas v. Wiggers,*

41 Ill. 470; *Bellinger v. Kitts,* 6 Barb. (N. Y.) 273; *Sire v. Rumbold* (City Ct. N. Y.) 11 N. Y. Supp. 734; *Herscher v. Brazier,* 38 Ill. App. 654; *Hard v. Brown,* 18 Vt. 87; *Pine Beach v. Columbia,* 106 Va. 810 (56 S. E. 822).

Applying these tests to the lease in controversy, we discover no reason for giving to it any narrower or more restricted effect than would ordinarily be inferred from a lease in which no express restrictive terms are employed. On the contrary, the circumstances under which the lease was made and the conduct of the parties with reference thereto go far to bear out the appellee's contention.

Of course oral testimony can not be allowed to vary the terms of a written lease, but it is sometimes admissible in support of the contract to show in what manner it was understood by the parties who made it. It is shown in evidence without dispute that, even before the preliminary contract was made, the matter of the opportunity the lessee would have to furnish heat and light to the other buildings was talked of and understood between appellee and D. S. Chamberlain, and that the latter in putting in the machinery and appliances provided the proper connections to facilitate such use; appellee paying the extra expense thus incurred. It further appears that said connections were made at or about the same time said machinery and appliances were installed, and that for some time before the lease was made appellee had been in possession using the steam and heat for both the Chamberlain Hotel and the annex, and that such use was open and notorious and well known to Chamberlain. Under such circumstances we think it very clear that the property upon which the lease was intended to operate was the property as it then existed fitted and intended, so far as the matter of heat and lights was concerned, to supply the needs of said additional property. In constructing and adapting the machinery and appliances to

5. SAME: parol evidence.

this use, the parties clearly contemplated the very things of which appellant now complains, and, unless she occupies a stronger position in this respect than D. S. Chamberlain would were he still the owner and were asking an injunction, she can not now be heard to say that such use is wrongful or unauthorized.

It has been very properly held that the use to which leased premises are being put at the date of the transaction, as well as their prior use, may be inquired into as bearing
6. SAME.      upon the intention of the parties to the lease. *Gutheridge v. Mungard*, 1 C. & P. 129. The condition of the premises may be inquired into. *Thomas v. Wiggers*, 41 Ill. 470. And where, as in this case, the lease does not reveal the intended use of the premises, it may be supplied by parol. *Landt v. Schneider*, 31 Mont. 15 (77 Pac. 307). So, also, may the suitableness of the leased premises for a given use. *Bartels v. Brain, supra*. In *Wood v. Edison Co.*, 184 Mass. 523 (69 N. E. 364), involving the construction of a lease, the court says: "If there was uncertainty in the meaning of the several writings taken together and applied to the situation and the circumstances of the parties, the construction put upon them by the parties themselves may be considered, and in a case like this it is important evidence." In an action on a hotel lease, evidence of the conduct of the parties in reference to the contract has been admitted showing their construction of its terms. *Bell's Adm'x v. Golding*, 27 Ind. 173.

Taking the record as a whole, there is no escape from the conclusion that the appellee's use of the property violates none of the express or fairly implied terms of the lease and is, moreover, in strict accord with the construction which was placed upon the agreement from the beginning by both Chamberlain and appellee.

To what extent appellant is bound by the acts of D.

S. Chamberlain we will consider in the next paragraph of this opinion.

II.    The views already expressed would probably make necessary the affirmance of the decree below, even if any room existed for difference of opinion upon the question of the agency of D. S. Chamberlain for appellant in negotiating the contracts made with appellee; but counsel have addressed themselves to that phase of the case, and we shall briefly indicate our conclusions thereon.    As contended by counsel, the mere fact that D. S. Chamberlain was the husband of the appellant and tenant in common with her in the title gave him no authority to sell or lease her property, or to bind her in any manner as to her separate interest in their joint property; but it is equally true that the husband may act as the wife's agent, and that such agency may be inferred from facts and circumstances fairly indicating that his acts with reference to the common property have been done with her knowledge and acquiescence.    This, we think, is the necessary conclusion to be drawn from the undisputed facts in evidence.    Appellant was in a distant city, and all of the negotiations with appellee were carried on by her husband, and of the fact that such negotiations were in progress she was advised. She was aware of at least the general nature of his purpose to improve the lot by building a hotel thereon and leasing it to appellee.    She ratified the preliminary contract, the negotiation of the mortgage, and the giving of the lease.    After the plans of the hotel had been first arranged, Chamberlain changed them, enlarging the building and increasing its cost beyond what was originally contemplated, and to this she appears to have acceded.    The cost of the building was largely in excess of the sum raised on the mortgage, and this, it would seem, was furnished by him.    In short, the management and control of the enterprise were from the beginning conducted by him in practically the same manner as if he

*7. HUSBAND AND WIFE: joint tenants: lease by husband: agency.*

were the sole owner, and of this conduct on his part appellant could not have been ignorant, for, although not in Des Moines, she knew the enterprise was being carried on and the building being brought to completion, and that she was herself exercising no active control over it. If such facts do not justify the finding of an agency on his part and authority from his wife to exercise reasonable discretion as he might in good faith believe their common interest demanded with reference to the details of the undertaking in which they were engaged, it would be difficult indeed to imagine a combination of circumstances from which the relation of principal and agent may be inferred. See 1 Clark & Skyle's Agency, section 79b, and cases there cited, in notes 50 and 57.

Furthermore, we think it is a sufficient answer to the plaintiff's position on this point to say that she is now in court seeking to enforce a contract made by and through an

8. SAME: ratification of agent's act: estoppel.

authorized or unauthorized agency of D. S. Chamberlain concerning their common property, and for several years she has been receiving the benefits of that contract, which she still retains, and she can not be heard to say that she will ratify and profit by one part of the transaction, while repudiating its obligation upon her as to another part. This doctrine is too well established in this and other courts to require argument. *Eadie v. Ashbaugh,* 44 Iowa, 519; *Lull v. Bank,* 110 Iowa, 537; *Higbee v. Greenbaum,* 112 Iowa, 75; *Victor Co. v. Rheinschild,* 25 Kan. 534; *Forster v. Wilshusen,* 14 Misc. Rep., 520 (35 N. Y. Supp. 1083); *Bacon v. Johnson,* 56 Mich. 182 (22 N. W. 276); *Swatara R. R. Co. v. Brune,* 6 Gill (Md.) 41; *Valentine v. Healy,* 158 N. Y. 369 (52 N. E. 1097, 43 L. R. A. 667). The record affords abundant support of the court's finding that Chamberlain was to all intents and purposes appellant's agent in their dealings with the appellee.

III. The testimony does not sustain appellant's as-

sertion that she had no notice or knowledge of appellee's claim of right to supply heat and light to the annex and to the Turner building until shortly before the beginning of this suit. To say nothing in this connection of the notice which the law imputes to her because of the knowledge of her agent, Chamberlain, it is further shown that, when appellee sought from her a modification of the lease on the ground that the rent was excessive and more than the business would justify him in paying, appellant employed a representative, one Brackett, to examine appellee's books and investigate the condition of the business to satisfy herself of the justice of the request and the advisability of yielding to the same. The books disclosed the fact that heat and light were being supplied to the annex and to the Turner building, and showed the income derived from that source. Brackett noted this item and asked appellee for an explanation thereof, which was given him. Appellant admits that Brackett told her that exhaust steam was being used to supply the annex. With this knowledge, both actual and constructive, and upon the showing thus made of the sources of appellee's income from the property, she entered into a written agreement which recognizes and affirms the lease already made, subject only to a modification respecting the rent to be paid, and this she did without offering objection or protest to the construction which she knew that appellee was placing upon the contract, or to the use he was making of the leased premises. To permit her now to repudiate such understanding and to so restrict the use of the premises as to cut off valuable rights and privileges which she then knew appellee was claiming to exercise under the lease would be in a high degree inequitable and violative of the statute, which provides that a contract shall be construed against either party in the sense in which he had reason to believe the other party understood it. Code, section 4617.

IV. The conclusion we have announced does not nega-

9. SAME.

tive the right of the appellant to maintain an action to prevent waste of the leased premises by excessive or unreasonable use of its machinery and appliances in supplying heat or light to other property. It is the claim of counsel in argument that this condition is in fact shown to exist, but we think the evidence as a whole does not sustain the contention. We shall not prolong the opinion to recite the testimony of the witnesses on this point. It is sufficient to say that the machinery is not shown to have been overtaxed, or that the plant in general has suffered deterioration by excessive demands upon its capacity.

*10. LANDLORD AND TENANT: waste.*

Other questions argued are governed by the findings hereinbefore stated, and we need not give them our consideration.

The decree of the district court appears to be right, and it is *affirmed.*